Erie County Area Vocational-Technical School *v.* Pennsylvania Labor Relations Board and Erie County Vo-Tech Federation, Local 1589, American Federation of Teachers. Commonwealth of Pennsylvania Labor Relations Board, Appellant.

Erie County Area Vocational-Technical School, Appellant *v.* Pennsylvania Labor Relations Board and Erie County Vo-Tech Federation, Local 1589, American Federation of Teachers, Appellees.

Argued May 6, 1980, before President Judge
CRUMLISH and Judges WILKINSON, JR., MENCER,
ROGERS, BLATT, CRAIG and WILLIAMS, JR. Judge
MACPHAIL did not participate.

*James L. Crawford,* with him *Larry J. Rappoport, Anthony C. Busillo* and *Mary Teresa Gavigan,* Assistant Attorney General, for appellant.

*Donald C. Buseck, Quinn, Gent, Buseck & Leemhuis, Inc.,* for appellee.

*Anthony J. Molloy, Jr., Sagot & Jennings,* for Erie County Vo-Tech Federation, intervenor.

OPINION BY JUDGE CRAIG, June 27, 1980:

Before us are the consolidated cross-appeals of the Pennsylvania Labor Relations Board (board) and the Erie County Area Vocational-Technical School (employer) from a final order of the Court of Common Pleas of Erie County affirming in part and reversing in part a board order designating certain non-professional employees to be included within a bargaining unit to be represented by the Erie County Vo-Tech .Federation, Local 1589, American Federation of Teachers (federation).

The board's June 8, 1978 nisi order certified the federation as the exclusive representative of an employee unit to include full-time and regular part-time maintenance, security, clerical, cafeteria aide, library aide and vocational evaluator aid employees.

On June 19, 1978, the employer filed exceptions to the board's nisi order, contesting inclusion in the unit of federally funded employees who worked in a variety of the above enumerated positions, three security men and the support personnel—clericals, aides and maintenance—who worked in the employer's adult education program. By order dated November 6, 1978, the board dismissed the employer's exceptions and entered a final order of certification.

On appeal by employer to the court of common pleas, Judge McClelland affirmed the board's order including the CETA employees and the adult education support personnel, and modified the board's order to exclude from the bargaining unit those security/maintenance employees who he found were "guards" under Section 604(3) of the Public Employee Relations Act (Act), 43 P.S. §1101.604.[1] The parties now appeal the court's decision.

First, the board contends that the lower court, in excluding the security/maintenance employees from the unit, erred in finding that those employees were "guards" under Section 604 of the Act, which provides in part that:

The board shall determine the appropriateness of a unit which shall be the public employer unit or a subdivision thereof. In determining the appropriateness of the unit, the board shall:

. . . .

(3) Not permit guards at prisons and mental hospitals, employes directly involved with and necessary to the functioning of the courts of this Commonwealth, *or any individual employed as a guard to enforce against employees and other persons, rules to protect property of the employer or to protect the safety of persons on the employer's premises* to be included in any unit with other public employes . . . (Emphasis added.)

The board has relied on our decision in *Township of Falls v. Pennsylvania Labor Relations Board,* 14 Pa. Commonwealth Ct. 494, 332 A.2d 412 (1974). There we held that school crossing guards, whose main function was to oversee children's safety on

---

[1] Act of July 23, 1970, P.L. 563, Art. I, *as amended.*

their way to school, a matter totally unrelated to the enforcement of rules against employees or protection of the employer's premises, were not "guards" within the purview of Section 604(3). The board asserts here that, because the security/maintenance employees are on duty only when other employees are not on the premises (working the 10:00 p.m. to 6:00 a.m. and weekend shifts), that these employees, like the school crossing guards, are not protecting the employer's property from other employees; therefore, they are not guards under Section 604(3) and are properly includable in the unit.

In *Delaware County Community College,* 6 Pa. P.E.R. 119 (1975) the board set forth the applicable law, relying on National Labor Relations Board guard cases.[2] The board stated that:

> [I]f the employees on guard duty have the essential responsibility of excluding unauthorized persons from the premises of an employer, they are guards within the meaning of Section 9(b)(3) of the federal statute. Further, even if the employees spend less than the majority of their time in such duties they are guards within the meaning of the National Labor Relations Act. . . . Even when guards perform janitorial functions such as making the rounds of the employer's property checking for fire hazards and checking doors, these persons have responsibilities which require that they be excluded from the same bargaining unit as other employees. . . . The NLRB has consistent-

---

[2] We have held that the board acts properly in reviewing the 'guard" cases under Section 9(b)(3) of the Labor Management Relations Act, *as amended,* 29 U.S.C. §159(b)(3), because the federal statute and the Act contain identical language. *Township of Falls, supra.*

ly ruled that employees who have the duty as part of their position to report to the Employer any unauthorized entry of persons on the property and any unauthorized removal of goods are guards. Furthermore any janitor-watchmen are guards who exclude unauthorized personnel even if they are not armed. (Citations omitted). 6 Pa. P.E.R. at 120.

The board's own findings support the lower court's determination that the security/maintenance personnel in this case are "guards" within Section 604(3) of the Act. The board found that these employees are required to safeguard millions of dollars worth of equipment on the employer's premises. The employees work weekends and nights, and are responsible for protecting equipment and the premises from unauthorized entrants by periodic inspection tours of the buildings, with check-ins at various clock points. In the event that the employees see someone on the premises, they are instructed to take down a description of the intruder, call the police and protect the property, as long as their lives are not endangered.

The testimony indicates that the maintenance aspects of the guards' function were minimal, and included changing light bulbs, or occasionally repairing a lock.

We agree with the employer's analysis that characterization of the employees as "guards" under the Act is not solely dependent on whether their main function is the enforcement of the employer's rules against other employees. The critical element of the "guard" function is that the employees are responsible for enforcing the employer's rules to protect the employer's property. During a strike or labor dispute this could mean possibly protecting the employer's property from striking employees; there the

divided loyalty problems which necessitate the guards' exclusion from the bargaining unit could become apparent. Therefore, we affirm the lower court's determination and hold that these security employees are guards and are properly excluded from the unit under Section 604(3) of the Act.

The employer first questions the lower court's affirmance of the board's order which included within the unit certain support personnel who work in the adult education program operated as a subsidiary activity of the vocational-technical school. The employer's position is that these service personnel should not be included in the same unit with the support personnel serving in the regular secondary program because the groups do not share an identifiable community of interest. However, the record supports the board's finding that the support personnel, whether in the secondary or adult education programs, all receive the same fringe benefits, vacations, hospitalization and pension programs.

The employer's reliance on *Erie County Vo-Tech School,* 8 Pa. P.E.R. 98 (1977), where the board clarified a unit of regular full-time teachers, excluding teachers in the adult program from the bargaining unit because they were casual employees and thus did not share the necessary community of interest with regular part-time or full-time teachers in the secondary program, is not controlling here. Because the support personnel of employer's secondary and adult education program share the requisite community of interest, we agree with the court's affirmance of the board on that point.

Finally, the employer seeks review of that portion of the board's determination which included in the unit five employees whose positions are entirely funded through Title VI, Comprehensive Employ-

ment Training Act (CETA).[3] The employer submits that, because none of these CETA-funded employees will be re-employed when the federal funds for the one-year positions run out, they do not have the expectation of continued employment necessary to establish their community of interest with the regularly funded employees of the unit.[4]

The board's position has been that CETA employees who perform the same duties, work the same hours, and enjoy the same benefits as regularly-funded employees occupy an identifiable community of interest and thus are properly within the same bargaining unit. In another CETA case, the board held that the mere fact that CETA employees receive their salary from funds different from those of other employees does not "somehow transcend them into a new breed of employee . . . [f]or collective bargaining purposes the CETA employees share an interest with all the other employees as to hours, working conditions, benefits, and wages, and that as to at least these bargaining subjects share a community of interest . . ." *In the Matter of the Employees of the Joinder Board of the County Commissioners of Venango, Clarion, Forest and Warren Counties,* 9 Pa. P.E.R. 9150 (1978).

---

[3] These employees are two maintenance men, one painter, one general office clerk and one copy machine operator. At the hearing the status of Janice Smith, a CETA-funded employee who worked as a vocational evaluator's aide was resolved, and is not at issue here.

[4] Further, the employer asserts that amendments to CETA passed during the course of these proceedings, setting maximum time limits on an individual's ability to receive wages out of the grant funds, definitely establish by statute that CETA employees have no expectancy of continued employment. However, because of our determination, we will not reach the issue of the effect of the CETA amendments.

However, in two more recent decisions, the board has articulated another requisite element of community of interest for the CETA-funded employee—reasonable expectation of continued employment. *In the Matter of the Employees of Luzerne County,*[5] 10 Pa. P.E.R. 10227 (1979) and *In the Matter of the Employes of Westmoreland County,* 11 Pa. P.E.R. 11017 (1979), the board included CETA-funded employees in representative units partly on the basis of a finding that the employer had a history or policy of placing some of the CETA workers into non-CETA-funded positions or affording terminated CETA employees the opportunity of being hired if a vacancy became available. The board held in both cases that the employer's policy of rehiring gave the CETA employees the requisite expectation of continued employment, which in turn established their community of interest with regularly-funded employees.

We agree with the sound approach thus recently adopted by the board. Consequently, we must differ with the result reached by the board and the court as to the CETA employees in this case.

Our scope of review is limited to a determination of whether the board's findings are supported by substantial and legally credible evidence and whether its conclusions based on the facts are reasonable and not capricious, arbitrary or illegal. *Western Psychiatric Institute and Clinic v. Pennsylvania Labor Relations Board,* 16 Pa. Commonwealth Ct. 204, 330 A.2d 257 (1974); *Pennsylvania Labor Relations Board v. State College Area School District,* 9 Pa. Commonwealth Ct. 229, 306 A2d 404 (1973).

---

[5] The board specifically noted in its decision that, although the case was decided after the passage of the 1968 CETA amendments, it would decline to generalize about the amendment's effects. The board based its determination on the particular facts of the case.

However, here the board's finding that the employer did not have any intention of terminating the CETA employees at the end of their federal funding is simply not supported by substantial evidence. William Silkman, the director of the Erie County Technical School, testified unequivocally that all of the CETA-funded employees would be terminated when their federal funding ended in September, 1978.[6]

Therefore, we reverse the lower court's order with regard to the inclusion of the CETA funded employees and affirm insofar as the order provides for the inclusion of the adult program support personnel within the unit and the exclusion of the security employees from the unit.

### ORDER

AND Now, this 27th day of June, 1980, the order of the Court of Common Pleas of Erie County (Civil Division No. 4735-A1978) is affirmed insofar as it excludes those employees who are guards from the bargaining unit and includes those employees who are support personnel of the adult education program within the unit. Insofar as the order affirms the Pennsylvania Labor Relation Board's determination that CETA employees are properly included in the

---

[6] Mr. Silkman testified with regard to Raynald Boutwell, a CETA-funded maintenance man, that ". . . he will be terminated at the end of the funded year." As to Joyce Conway, a part-time CETA-funded clerical, he stated that her position will not become permanent and that Vo-Tech would not employ a full-time painter when CETA-funded Elmer Cook's funded year of employment ended.

With regard to Patricia Heubel, the CETA-funded machine copier, Silkman stated that, although the service she provided was "nice", it is not one that would be supported by the local budget, and as with Louis Gonza's CETA-funded maintenance post, the CETA-funded services would be "picked up" by the permanent Vo-Tech staff.

unit, the order of the lower court is reversed, and it is determined that such CETA employees are excluded.