American Federation of State, County and Municipal Employees, Local Union 757, AFL-CIO, Appellant *v.* City of Butler, Appellee.

Argued October 6, 1981, before President Judge CRUMLISH and Judges MENCER, ROGERS, BLATT and WILLIAMS, JR.

*Theodore M. Lieverman, Kirschner, Walters & Willig,* for appellant.

*Martin J. O'Brien,* for appellee.

OPINION BY JUDGE WILLIAMS, JR., April 15, 1982:

This case comes before the Court on an appeal by the American Federation of State, County and Municipal Employees, Local Union 757, AFL-CIO (union). The Common Pleas Court of Butler County found that the award of the arbitrator was against both the law and the weight of the evidence. The union asks this Court to reverse the lower court and reinstate the award of the arbitrator, which upheld consolidated grievances and ordered the City of Butler (employer) to pay certain CETA[1] workers scale wages retroactive to their date of employment.

On December 29, 1976, the employer and the union signed a collective bargaining agreement, effective January 1, 1977 through December 31, 1978. Approximately one month later, the employer commenced participation in the federally funded CETA program, pursuant to which it created and filled nine CETA positions on the city work rolls.

Some twenty-three months later, certain CETA workers filed grievances, alleging that the city had violated the collective bargaining agreement by paying them less than the contract scale. The city denied the

---

[1] Comprehensive Employment and Training Act of 1973, 29 U.S.C. §§801-992.

grievance, asserting that (1) CETA employees are not union members, and are therefore not considered to be within the scope of the collective bargaining agreement, and (2) the grievances should be barred as being untimely under the agreement, which states that such actions must be taken within five (5) working days of the unacceptable conduct.

The case proceeded to arbitration, where the arbitrator determined that the grievants should indeed have been paid the contract scale. In a well-reasoned opinion, he examined the CETA positions in terms of their "community of interest" with the other employees in the unit—the identity of the type of work performed, the regularity of hours, and the fringe benefits. Citing numerous agency decisions,[2] he found that

> [t]he evidence overwhelmingly demonstrates grievants were hired to work as regular, full-time laborers in the Street Department. As such, the grievants must be considered, under PLRB standards, as members of the bargaining unit.

This Court has previously examined the standards for inclusion of CETA workers in an established bargaining unit. In *Erie County Area Vocational-Technical School v. Pennsylvania Labor Relations Board,* 52 Pa. Commonwealth Ct. 388, 417 A.2d 796 (1980), we noted that CETA workers must be compared to regularly funded workers in several particulars to ascertain whether the requisite community of interest exists: duties, hours, working conditions, benefits, wages, and a reasonable expectation of continued employment, *i.e.,* an employer

> history or policy of placing some of the CETA workers into non-CETA-funded positions or af-

---

[2] Although these decisions are certainly not binding on this Court, they lend support to the arbitrator's analysis.

fording terminated CETA employees the opportunity of being hired if a vacancy became available.

*Id.* at 396, 417 A.2d at 799.

In the case presently before the Court, the arbitrator found that the CETA workers had been informed that they would either be assigned to, or given first option for, any vacancies which occurred in "regular" employees' positions. The common pleas court reiterated this assertion in stating that the city had "filled city jobs vacated by 'regular' employees with CETA employees." Opinion, page 5. Since all other aspects of the CETA workers' job were found to be identical to those of regular workers, we cannot take issue with the arbitrator's determination that they met the test for inclusion in the bargaining unit.

The city has continuously maintained that the agreements[3] were never intended to include CETA workers. In response to that contention, the arbitrator examined the cover page of the agreements, recognizing that it would normally be considered merely descriptive in nature.

The cover sheet states:
  Employees Covered:
Street Department
Park Maintenance Employees
Sign Department
*But Excluding* Foremen, Assistant Supervisors,
Supervisors and Part-Time Employees of above
Departments. ... (Emphasis added.)

Arbitrator's Opinion, Page 3. He interpreted it, in this instance, as refining the recognition clause, and took a strict constructionist approach, determining that the failure of the city to include CETA workers

---

[3] Subsequent to the 1977-1978 agreement, a second agreement was signed by the parties, effective January 1, 1979-December 31, 1981.

in the list of *excluded* workers constitutes a clear intent of the city to have the contract cover such employees. He dismissed the city's argument that the failure was a mutual mistake, noting that at the time the first agreement was signed, the union had no idea that negotiations for CETA funds were being conducted, and therefore the mistake, if any, was unilateral. When the second contract was signed, the union made no mistake in accepting the clear and unambiguous language of the contract as not excluding CETA workers, and therefore, again the asserted mistake was unilateral.

Turning to the circumstances surrounding the execution of the agreement,[4] the arbitrator examined 29 U.S.C. §848, as it then was enacted. It required that any labor organization representing employees who worked in jobs similar to those proposed for CETA workers must be notified *prior* to the submission of the application for funding. This notification was never afforded the union in the case *sub judice*. In his analysis of the implications of the lack of notice, the arbitrator related the omission not only to the question of mutual mistake, discussed *supra,* but also to the timeliness of the claims.

---

[4] *See, Community College of Beaver County v. Community College of Beaver County, Society of Faculty (PSEA/NEA),* 473 Pa. 576, 593-94, 375 A.2d 1267, 1275 (1977) :

> Where a task of an arbitrator, PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement *and the circumstances surrounding its execution,* then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if 'the interpretation can in any rational way be derived from the agreement, *viewed in light of its language, its context, and any other indicia of the parties' intention . . .* the arbitrator's interpretation of the contract must be upheld if it is a reasonable one.' (Citations omitted.)

As previously noted, the city has repeatedly asserted that the grievances should be dismissed because they were not filed within five (5) days of the claimants' awareness that they were being paid less than other workers in their class. The arbitrator determined that several factors serve to vitiate this argument: (1) the lack of notice to the union, (2) lack of notice to the CETA workers that the grievance procedure, or any other rights under the collective bargaining agreement, existed,[5] (3) the city's repeated assertions to the CETA workers that they were not employed under the terms of the collective bargaining agreement, (4) the history of the "loan" of county CETA workers to the city,[6] and (5) the lack of an established procedure for instituting a grievance, coupled with one grievant's oral complaint some months before this case commenced.

In *School District of the City of Duquesne v. Duquesne Education Association*, 475 Pa. 279, 380 A.2d 353 (1977), the Pennsylvania Supreme Court resolved a case very similar to the one presently before the Court in favor of the arbitrator's right to make procedural determinations. That collective bargaining agreement provided that a grievance be filed within fifteen (15) days of the occurrence of the questionable activity. That claimant filed his grievance almost five months after the incident, but the employer failed to

---

[5] At that time 29 U.S.C. §848(a)(8) directed that the Secretary of Labor not provide funding for a CETA program unless he had determined that "every participant shall be advised, prior to entering upon employment, of his rights and benefits in connection with such employment."

[6] The union field representative had previously investigated these "loaned" CETA workers, and had determined that they were not eligible for participation in the union as city workers. The union presented evidence that it believed that the claimants here suffered from the same legal infirmity when they first approached the union with the complaint.

object to the untimeliness until the fourth[7] level of resolution, arbitration. The Court, finding "no limitation in the collective bargaining agreement which would prohibit an arbitrator from deciding procedural issues"[8] held that he had the authority to determine that the employer had waived its right to raise the timeliness issue. It opined that if the subject matter of the disagreement was arbitrable, procedural matters emanating therefrom are also within the purview of the arbitrator. We find that case to be controlling in this instance, and therefore reverse the common pleas court, thus reinstating the ruling of the arbitrator concerning the timeliness issue.

Concerning the substantive issue, whether the CETA workers are entitled to the protections of the collective bargaining agreement, we find that *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981) is dispositive. That case involved a dispute over the rate of pay for tenured teachers suspended in a reduction in force, and then rehired as substitutes. Quoting *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362 (1960), the Court noted:

> It is the arbtirator's construction which was bargained for, and so far as the arbitrator's decision concerns the construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

In this instance, what was bargained for was the arbitrator's interpretation of the contract language, to

---

[7] The first three levels of resolution there included (1) discussing the problem with one's immediate supervisor, (2) submitting a written grievance to the chief school administrator, and (3) filing the grievance with the Board of School Directors. Here, too, there was a several-step grievance procedure which culminated with arbitration.

[8] *Id.* at 285, 380 A.2d at 356.

determine whether CETA workers were or were not covered by it. The arbitrator decided that they were covered, and, under the circumstances present here, that determination may not be disturbed by the courts.

ORDER

AND Now, this 15th day of April, 1982, the Order of the Court of Common Pleas of Butler County, entered to Docket No. A.D. 79-1167, dated December 18, 1980, is hereby reversed, and the decision of the arbitrator is reinstated.

Judge MENCER dissents.

Judge PALLADINO did not participate in the decision in this case.