104 Pa. Commonwealth Ct. 191 (1987)
521 A.2d 965
Greater Johnstown Area Vocational-Technical School, Appellant
v.
Greater Johnstown Area Vocational-Technical Education Association, Appellee.
No. 171 C.D. 1985.
Commonwealth Court of Pennsylvania.
Argued October 6, 1986.
February 25, 1987.
*192 Argued October 6, 1986, before Judges MacPHAIL, DOYLE and BARRY, sitting as a panel of three.
*193 Gary L. Costlow, with him, Marlin B. Stephens, for appellant.
William K. Eckel, for appellee.
OPINION BY JUDGE DOYLE, February 25, 1987:
This is an appeal by the Greater Johnstown Vocational-Technical School (School) from an order of the Court of Common Pleas of Cambria County which upheld a grievance filed by the Greater Johnstown Vocational-Technical Education Association (Association) on behalf of Jill Ashcom (Grievant). We reverse.
Grievant was a tenured professional employee of the School, having been employed by the School since August 9, 1977. While Grievant taught in the Mathematics Department of the School, she was also certified to teach French. By letter dated April 28, 1983, the Joint Operations Committee (Committee) of the School notified Grievant that they were considering the possibility of furloughing her for the 1983-84 school year. The Association filed a grievance on her behalf on May 6, 1983, alleging that Grievant had been improperly furloughed. On July 6, 1983, Grievant was formally notified that she was being furloughed.
The grievance was ultimately submitted to arbitration. The Association claimed that Grievant's furlough was improper because the School could have realigned its teaching staff so as to retain Grievant. The Association's proposed realignment scheme as submitted to the *194 arbitrator would have allowed Grievant to remain a mathematics teacher, and would have required another teacher in the Mathematics Department with more departmental and district-wide seniority than Grievant to become a guidance counselor. A guidance counselor with less school-wide seniority than Grievant would have been furloughed.
The School's position, on the other hand, was that the Collective Bargaining Agreement (Agreement) mandated that all reductions in force were to be done solely on the basis of departmental seniority. Since Grievant was the least senior member of both the Mathematics and French departments, she was the person to be furloughed.
Article V, Section B of the Agreement reads:
Reduction in Force
If a reduction in force is to take place, the member of the department with the least Greater Johnstown Area Vocational-Technical School seniority, shall be the furloughed individual. In the case of individuals with multiple certifications, these individuals may transfer to another department and/or subject area in which they are properly certified and have school seniority over a member in that department and/or subject area.
(Emphasis added.) Article XIII of the Agreement is a statutory savings clause which says:
Nothing contained herein shall be construed to deny or restrict any Professional Employe or the Joint Operating Committee such rights as he or it may have under the Public School Code of 1949, as amended, or the Public School Employe's Relation Act, Act 195, or other applicable laws and regulations.
*195 The arbitrator found that Article XIII of the Agreement incorporated Section 1125.1(c) of the Public School Code of 1949 (Code)[1] which provides:
A school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes.
The arbitrator then held that Section 1125.1(c) of the Code supplemented the terms of Article V, Section B of the Agreement, thereby mandating the School to make any educationally sound realignment on a district-wide basis which would result in the retention of Grievant. Since the School did not demonstrate that the Association's proposed realignment was unsound, the proposal was accepted by the Arbitrator, who ordered Grievant reinstated.
The School petitioned the common pleas court for review of the arbitrator's decision pursuant to the provisions of the Uniform Arbitration Act.[2] The common pleas court refused to overturn the arbitrator's award and this appeal followed.
Two issues are raised by the School in this appeal. The first is whether the grievance in this case was timely filed by the Association. More specifically, the issue is whether the grievance was premature because it was filed before the Grievant was formally informed of the furlough. The second issue is whether the arbitrator exceeded his authority by ordering the School to realign its teaching staff in the manner proposed by the Association. *196 This second issue focuses upon the issue of whether the School is compelled to realign its professional staff on a district-wide basis, as proposed by the Association, or whether the School district is correct in maintaining that a realignment caused by reductions in force need only be carried out on a department-wide seniority basis, as provided in the Agreement.
We begin by noting that our scope of review of an arbitrator's decision is highly circumscribed and his decision will not be overturned if it draws its essence from the collective bargaining agreement. Ringgold Area School District v. Ringgold Education Association, 489 Pa. 380, 414 A.2d 118 (1980). Under the "essence test," we must inquire as to whether the subject matter of the dispute is encompassed within the terms of the agreement, and if the arbitrator's interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context and any other indicia of the parties' intentions, it must be upheld on appeal. Leechburg Area School District v. Dale, 492 Pa. 515, 424 A.2d 1309 (1981). Phrased another way, an arbitrator's decision cannot be upheld if his interpretation of the agreement is manifestly unreasonable. Philadelphia Housing Authority v. Union of Security Officers # 1, 500 Pa. 213, 455 A.2d 625 (1983).
Addressing first the issue of timeliness, we find that Article IV, Section A(1) of the Agreement defines grievance as "any alleged violation of this agreement with respect to its meaning, interpretation or application." Article IV, Section B(b) of the Agreement provides that all grievances "will be deemed waived unless submitted within five days (exclusive of Saturday, Sunday or holidays) after the aggrieved party knew or should have known of the events or conditions on which it is based." The question of whether a grievance is timely filed is a procedural issue and an arbitrator may consider that *197 issue, unless there is a limitation in the collective bargaining agreement prohibiting the arbitrator from deciding procedural issues. School District of the City of Duquesne v. Duquesne Education Association, 475 Pa. 279, 380 A.2d 353 (1977); American Federation of State, County and Municipal Employees v. City of Butler, 66 Pa. Commonwealth Ct. 205, 443 A.2d 1357 (1982). Since the issue of whether the grievance was timely filed is squarely covered by the terms of the Agreement and the arbitrator could rationally decide that Grievant's receipt of the Committee's letter notifying her of its intent to furlough her for the 1983-84 school year triggered the agreement's grievance mechanism, this part of the arbitrator's award must be upheld.
We must reverse the arbitrator, however, on the substance of the grievance. The arbitrator interpreted Section 1125.1(c) of the Code as giving different rights to Grievant than she had under Article V, Section B of the Agreement. Although we recognize that the arbitrator is the interpreter of the terms of a collective bargaining agreement and his decision is entitled to great deference, when the rights of the parties under the agreement are dependent upon the interpretation of a statute, he must follow well established case law relating to the statute as laid down by the courts. We held in Godfrey v. Penns Valley School District, 68 Pa. Commonwealth Ct. 166, 449 A.2d 765 (1982) (affirming on the opinion of the trial court, 22 Pa. D. & C. 3d 466 (1981)) that a school district is not required to realign its professional staff in such a way that the complaining teacher replaces a more senior teacher possessing dual certifications, thereby forcing the teacher with dual certification to teach in his/her other area of certification and thereby in turn forcing the suspension of a third teacher who had less seniority than the complaining teacher (by short terminology, "checkerboarding"). Cf. *198 Platko v. Laurel Highlands School District, 49 Pa. Commonwealth Ct. 210, 410 A.2d 960 (1980). This principle was reaffirmed in our decisions in Gibbons v. New Castle Area School District, 93 Pa. Commonwealth Ct. 28, 500 A.2d 922 (1985), allocatur granted, 512 Pa. 360, 516 A.2d 1186 (1986) and James v. Big Beaver Falls Area School District, 98 Pa. Commonwealth Ct. 319, 511 A.2d 900 (1986).[3]
The arbitrator in interpreting Section 1125.1(c) is bound by this clear precedent and because his determination is contrary to law, it cannot stand. Indeed, in light of the current case law, if we were to accept the realignment ordered by the arbitrator, we would place the School in the position of being sued either by Grievant, if the School adopted the department-wide realignment, or by the furloughed guidance counselor, if the School followed the district-wide realignment plan.
But even if Section 1125.1(c) of the Code, on the one hand, and Article V, Section B of the Agreement, on the other hand, were contrary and dictated different realignment results, we would still have to find that the arbitrator exceeded his authority in ordering the reinstatement of Grievant. This is because, although the arbitrator found that Section 1125.1(c) of the Code was contained within the Agreement by virtue of the statutory savings clause which incorporates the entire Code into the Agreement, such clause also encompasses Section 1125.1(e) of the Code[4] which provides:

*199 Nothing contained in section 1125.1(a) through (d) shall be construed to supersede or preempt any provisions of a collective bargaining agreement negotiated by a school entity and an exclusive representative of the employes in accordance with ... the `Public Employe Relations Act,' however, no agreement shall prohibit the right of a professional employe who is not a member of a bargaining unit from retaining seniority rights under the provisions of this act.
This is a clear legislative mandate that collectively bargained for reductions in force of school personnel are to be given primacy over the manner of reduction in force delineated by the Code. The School and the Association negotiated just such a provision in this case, and this curtailed any rights Grievant may have had under Section 1125.1(a)-(d). Arnold v. Board of School Directors of the School District of Pittsburgh, 81 Pa. Commonwealth Ct. 36, 472 A.2d 283 (1984). The arbitrator exceeded his authority when, by his interpretation of the statute, he ordered realignment in conformity with his own interpretation of Section 1125.1(c) of the Code, that is, on a district-wide seniority basis. The order of the Court of Common Pleas of Cambria County is therefore reversed.

ORDER
NOW, February 25, 1987, the order of the Court of Common Pleas of Cambria County, No. 1984-2252, dated December 17, 1984 is hereby reversed.
DISSENTING OPINION BY JUDGE BARRY:
In Leechburg Area School District v. Dale, 492 Pa. 515, 520-521, 424 A.2d 1309, 1312-13 (1981), the court, through Justice (now Chief Justice) NIX, stated without reservation:

*200 The essence test requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court." (Emphasis added.)
Less than a year ago, our Court was no less emphatic:
The heart of the essence test is that, if the subject matter is within the four corners of the contract, courts are not to judge `the validity of the arbitrator's interpretation', and therefore the judiciary cannot insist on being satisfied that the arbitrator has reflected the intentions of the parties in the same way the court would describe them.
Conneaut School Service Personnel Association v. Conneaut School District, 96 Pa. Commonwealth Ct. 586, 591, 508 A.2d 1271, 1274 (1986). Judge CRAIG also stated in that opinion, "Because [the question presented there] was covered by the contract and therefore squarely committed to the arbitrator's discretion, courts have `no business' overruling the arbitrator merely `because their interpretation of the contract is different from his.' Leechburg." Id. at 595, 508 A.2d at 1275.
Article XIII of the collective bargaining agreement signed by these parties states, "Nothing contained herein shall be construed to deny or restrict to any Professional Employe or the Joint Operating Committee such rights as he or it may have under the Public School Code of 1949. ..." This portion of the agreement then brings into the contract Section 1125.1 of the School Code of 1949 as if that language were the parties' own. There can be no question that the arbitrator here was *201 within the four corners of the agreement when he resolved this dispute. Because the arbitrator did not stray outside the agreement, the majority does not follow the clear mandate of both the Supreme Court and this Court.
I would affirm.
NOTES
[1] Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §11-1125.1(c). Section 1125.1 was added by Section 3 of the Act of November 20, 1979, P.L. 465.
[2] Sections 7301 through 7320 of the Judicial Code, 42 Pa. C. S. §§7301-7320.
[3] This case is distinguishable from East Allegheny School District v. Janero, 78 Pa. Commonwealth Ct. 462, 467 A.2d 665 (1983) (affirming on the opinion of the trial court, 27 Pa. D. & C. 3d 260 (1982)). The realignment sought by Janero involved a change in position for only 41 days and at the time the trial court heard the matter the 41 days had elapsed; the trial court apparently took advantage of hindsight in declaring there would have been no impracticality in carrying out the realignment.
[4] 24 P.S. §11-1125.1(e).