**DANVILLE AREA SCHOOL DISTRICT, Appellant,**

v.

**DANVILLE AREA EDUCATION ASSOCIATION, PSEA/NEA.**

Commonwealth Court of Pennsylvania.

Argued April 11, 1997.

Decided June 18, 1997.

Reargument Denied Aug. 18, 1997.

Stephen S. Russell, New Cumberland, for appellant.

Charles L. Herring, Philadelphia, for appellee.

Before DOYLE and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

The Danville Area School District (District) appeals from an order of the Court of Common Pleas of the 26th Judicial District, Montour County Branch (trial court), which affirmed an arbitration award granting modified retirement benefits to Judith Walter (Walter) pursuant to a collective bargaining agreement (Agreement) negotiated under the Public Employe Relations Act [1] (Act 195) between the District and the Danville Area

---

1. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

Education Association (Association). We reverse.

Walter was a teacher in the District when she submitted a letter, dated May 13, 1992, indicating that she was seeking to retire at the end of the 1991–92 school year, and that she had served twenty-four years with the District's public school system. As a public school teacher, Walter made mandatory contributions to the Public School Employees' Retirement System (PSERS) pursuant to Section 8301 of the Public School Employees' Retirement Code (Retirement Code).[2] On June 2, 1992, the Board of School Directors (Board) accepted Walter's resignation. Having served in the District for twenty-four years, Walter, according to the terms of the Agreement, received a one-time retirement payment from the District for $675.14 at the end of the school year. To those retirees with over thirty years experience, however, the Agreement provided a greater retirement payment and a fixed amount for monthly reimbursement of medical insurance premiums, for a time certain after retirement.

The Agreement provides various benefits to which professional employees within the bargaining unit will be entitled upon retirement. Article XVIII provides the following:

Section 18.01 Full-time and substitute professional employees, upon permanent retirement from the field of public education with less than thirty (30) years of service in public education shall be paid for years of service with the Danville Area School District in accordance with the following tables:

| Years Service DASD | Rate | Maximum |
|---|---|---|
| 20 or less | @$30/year | $ 600 |
| Over 20 to 30 | @$35/year | $1,015 |

Full-time professional employees with at least thirty (30) years of service in Public Education and who retire from the Danville Area School District shall receive the following:

(a) Payment of $6,500

(b) Actual Cost Up To $247.00 for monthly premium payment to continue their hospitalization and medical service plan (either individual or family) for a period of up to six (6) years from the date of retirement or age sixty-five (65) whichever is earlier.

(c) To be eligible, retirees must notify the School District that they are retiring by April 1 of the year in which they intend to retire.

(R.R. at 36a–37a.)

In 1992, our General Assembly passed legislation, commonly known as the "Mellow Bill,"[3] which amended Section 8302 of the Retirement Code, 24 Pa.C.S. § 8302. The essence of this statutory amendment was to permit early retirement under the Retirement Code by crediting retirees with extra service time above their actual service time. The Mellow Bill applied to persons who were not annuitants, i.e. retirees, on July 1, 1992, and who terminated their school service between July 1, 1992 and August 31, 1993. Because Walter's retirement became effective in June 1992, she did not qualify for the receipt of credited service time under the Mellow Bill.

In 1994, our General Assembly passed another amendment to Section 8302 of the Retirement Code, commonly known as the "Son of Mellow."[4] Son of Mellow had the effect of making the original Mellow Bill retroactive

**2.** 24 Pa.C.S. § 8301.

**3.** Act of December 21, 1992, P.L. 1681.

**4.** 24 Pa.C.S. § 8302(b.2). This section of the Code provides the following:

Credited service as retirement incentive.—Notwithstanding any provisions of this title to the contrary, for the period of May 15, 1992, to August 31, 1993, a member who is not an annuitant on May 15, 1992, who terminates school service between May 15, 1992, and August 31, 1993, inclusive, who will be 55 years of age or older on August 31, 1993, with ten or more eligibility points, who files an application for retirement before September 1, 1993, and who declares his intent to retire prior to April 1, 1993, shall be credited with an additional 10% of their credited service.

to May 15, 1992, which brought Walter within the Mellow Bill provisions.

PSERS subsequently notified Walter that the recent amendment to the Mellow Bill enabled PSERS to credit her with 28.89 years of service plus an additional 10% bonus, giving Walter 31.77 years of credited service time. With this information, Walter requested that she receive more retirement money from the District because she now qualified for the greater retirement benefits that the Agreement afforded to retirees with over thirty years of service. The Board refused Walter's request for additional money under the Agreement.

Walter filed a grievance which culminated in arbitration wherein the District challenged the arbitrability and the merits of the grievance. The arbitrator sustained the grievance concluding that the grievance was arbitrable, Walter was entitled to be credited with over thirty years of service, and Walter was retroactively entitled to benefits pursuant to the over-thirty provisions in Article XVIII of the Agreement. The trial court affirmed.

■ The sole issue before us on appeal is whether the trial court erred in affirming the arbitration award and concluding that such award was derived from the essence of the Agreement.

■ Our review of Act 195 grievance arbitration awards, hereinafter referred to as the "essence test," is limited to determining "whether the arbitrator's decision could rationally be derived from the collective bargaining agreement, viewed in light of its language, its context and any other indicia of the parties' intention." *Austin Area Education Association, PSEA/NEA v. Austin Area School District,* 159 Pa.Cmwlth. 640, 634 A.2d 276, 278–79 (1993). We have stated that a "reviewing court may disturb the award only where there is a manifest disregard of the agreement, completely unsupported by principles of contract construction." *Pennsylvania Turnpike Commission v. Teamsters Local Union No. 250,* 162 Pa. Cmwlth. 633, 639 A.2d 968, 972 (1994). Under the essence test, we must also determine whether the subject matter of the grievance is within the purview of the collective bargaining agreement and, therefore, arbitrable. *Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Association,* 104 Pa.Cmwlth. 191, 521 A.2d 965 (1987), *affirmed,* 520 Pa. 197, 553 A.2d 913 (1989). Thus, we must first examine the terms of the Agreement in the instant case.

The District argues that, even if the Agreement established a continual contractual relationship with Walter for purposes of the retirement payment at issue, thereby providing Walter with the requisite standing to arbitrate, the grievance in the instant matter is not arbitrable because the District could not have intended to be bound by subsequent legislative changes in the state mandated retirement system. We agree.

■ Whether a matter is properly within the jurisdiction of the arbitrator depends on the intention of the parties as expressed in the terms of the agreement. *Neshaminy Federation of Teachers v. Neshaminy School District,* 501 Pa. 534, 462 A.2d 629 (1983). In *Juniata–Mifflin Counties Vocational–Technical School v. Corbin,* 547 Pa. 495, 691 A.2d 924 (1997), our Supreme Court held that an arbitrator's decision to apply a provision in the Public School Code of 1949 to the collective bargaining agreement was reasonable because *the agreement expressly provided that the professional employees could not be denied their rights under that statute.* However, unlike that case, the Agreement here does not incorporate any provisions of the Retirement Code. Absent language to the contrary, the parties could not have intended to be bound by subsequent changes implemented by PSERS pursuant to Retirement Code amendments.

■ Moreover, the amendments to the Retirement Code cannot be applied to the retirement provisions in the Agreement because both the Pennsylvania Constitution and the United States Constitution prohibit the impairment of contracts through retroactive legislation. Under the United States and the Pennsylvania Constitutions, the laws that are in effect at the time the parties enter into a contractual relationship are merged with the rights and obligations set forth in the agree-

ment, which may not be altered by subsequent legislation. *Empire Sanitary Landfill, Inc. v. Department of Environmental Resources*, 546 Pa. 315, 684 A.2d 1047 (1996). Indeed, in *First National Bank of Pennsylvania v. Flanagan*, 515 Pa. 263, 528 A.2d 134 (1987), our Supreme Court held that the application of new legislation that becomes effective after the parties enter into a contract would unconstitutionally impair the rights and obligations established by their contract, stating:

> Any law which enlarges, abridges, or in any manner changes the intention of the parties as evidenced by their contract, imposing conditions not expressed therein or dispensing with the performance of those which are a part of it, impairs its obligation, whether the law affects the validity, construction, duration, or enforcement of the contract[.]
>
> . . . .
>
> The amount of impairment of the substantive obligation of a contract is immaterial. Any deviation from its terms, however slight, falls within the meaning of the constitution[.]

*Id.* at 270, 528 A.2d at 137 (alterations in original) (quoting *Beaver County Building and Loan Association v. Winowich*, 323 Pa. 483, 492–93, 187 A. 481, 485 (1936)).

Here, the Agreement became effective on July 1, 1990. Under its terms, Walter received $675.14 which she accepted as payment-in-full for her retirement benefits. Subsequent legislation that specifically amended the Retirement Code cannot be retroactively applied to the previously established and vested rights in the Agreement, thereby impairing the rights of the District. *Flanagan*; *Empire Sanitary Landfill.*

■ Additionally, our Supreme Court has stated that, once a matter is included in a collective bargaining agreement, it becomes binding on the parties to the agreement like any other contractual provision. *City of Philadelphia v. District Council 33, AFSCME, AFL–CIO*, 528 Pa. 355, 598 A.2d 256 (1991). By seeking to incorporate the Mellow amendments into the Agreement, Walter and the Association are unilaterally attempting to alter the terms of the Agreement. In *City of Philadelphia*, the Court stated that "[i]f we were to allow provisions of a collective bargaining agreement to be unilaterally altered, we would effectively render the collective bargaining process a nullity." *Id.* at 362–63, 598 A.2d at 260.

■ Given the unpredictability of legislative enactments, the arbitrator's conclusion that legislation which amends the provisions of the Retirement Code automatically amends a collective bargaining agreement, absent language in the agreement expressing such intent, is manifestly unreasonable because it fails to derive its essence from the Agreement. Such a result would permit both an unconstitutional and unintentional impairment of collective bargaining contracts as well as a unilateral change in the terms and conditions of collective bargaining agreements. The arbitrator's conclusion would also circumvent the bargaining process and disrupt the express purpose of Act 195, which is to promote harmonious labor relations by requiring public employers to bargain individually with their employees' certified representative. Section 101 of Act 195, 43 P.S. § 1101.101.

In negotiating the Agreement with the Association, the District intended to bind itself to agreed-upon terms that made its obligations predictable. The District has a budget with finite financial resources, and the Agreement's retirement provisions permit the District to plan for financial outlays and predict how much of its budget will be consumed by retirement payments. To allow a change in the PSERS to effectuate an increase in benefits under the Agreement could cause unplanned outlays in scarce educational resources and potentially force school districts into financial disaster.

Accordingly, we hold that Walter's grievance was not arbitrable as a matter of law under the United States and the Pennsylvania Constitutions and the Agreement. Because the arbitrator's decision to the contrary was thereby manifestly unreasonable, we reverse the order of the trial court affirming the arbitration award.[5]

---

5. Given our disposition of the instant matter, we    need not address the District's contentions that

### ORDER

AND NOW, this 18th day of June, 1997, the order of the Court of Common Pleas of the 26th Judicial District, Montour County Branch, at No. 27 of 1996, dated July 18, 1996, is hereby reversed.

DOYLE, J., dissents.

Walter had no standing on the basis that a retiree is not an employee in the bargaining unit, that her grievance was filed in an untimely manner, and that the arbitrator's conclusion crediting

Walter with extra years of service was manifestly unreasonable under the express terms of the Agreement.