# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gateway School District, : 
                    Appellant : 
                     : 
            v. : No. 738 C.D. 2017
                     : ARGUED: February 6, 2018
Gateway Education Association/ : 
PSEA/NEA : 


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED: February 28, 2018**

      Gateway School District (the District) appeals from an order of the Court of Common Pleas of Allegheny County (common pleas) that denied the District's petition to vacate an arbitration award in favor of retired teacher Mr. Seech (the Grievant) directing that he and his husband be granted the same retiree benefits as other married couples at the District's expense. We affirm.

      The relevant facts as found by the arbitrator are as follows.[1] After more than thirty years of exemplary service, Grievant retired from the District in June 2013. Even though he had been in a long-term same-sex relationship for more than seventeen years and held himself out to be married, he elected single coverage for

---

[1] An arbitrator's "findings of fact are not reviewable on appeal, and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation." *Coatesville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n, PSEA*, 978 A.2d 413, 415 n.2 (Pa. Cmwlth. 2009).

his retirement health care benefits pursuant to the applicable collective bargaining agreement (CBA)[2] because it was the only option available to him at that time.[3] Specifically, he was not legally married and could not be so under Pennsylvania law. After the federal district court in *Whitewood v. Wolf*, 992 F. Supp. 2d 410 (M.D. Pa. 2014), *appeal dismissed sub nom.*, *Whitewood v. Sec'y Pa. Dep't of Health*, 621 Fed. Appx. 144 (3d Cir. 2015), declared it unconstitutional not to recognize same-sex marriage, the couple married in June 2014. Grievant contacted the District and requested that it add his spouse to Grievant's retiree health insurance coverage at the District's expense. The District refused,[4] noting that the CBA in place at the time of Grievant's retirement did not recognize same-sex marriage. In addition, it cited its long-standing past practice providing that retiree medical benefits could not be changed after retirement even if the retiree remarried or married for the first time.[5]

---

[2] The CBA "refers in its contents to health insurance plans [provided by the Allegheny County Schools Health Insurance Consortium (ASCHIC)] and eligibility of same." (Arbitration Award at 9; Reproduced Record (R.R.) at 9a.) The arbitrator stated that "[t]he retiree benefit plan and eligibility, etc., are all under and subservient to the provisions of the [CBA]." (*Id*. at 10; R.R. at 10a.)

[3] In relevant part, the pertinent provision of the CBA provides:

> Anyone electing to retire under this retirement incentive shall having the following benefits . . . .
>
> The retiree may choose from the available standard medical plans provided by the [ASCHIC] under the following:
>
> Individual, Husband/Wife, Parent and Child(ren) or Family Coverage or a period of nine (9) years or the employee and/or spouse reaches the age of 65, or the employee has similar benefits available from any other source, whichever comes first.

(CBA, Article XXXI, § 31.1 C. at 38; R.R. at 52a.)

[4] Acknowledging that it immediately denied Grievant's request, the District observes that the testimony reflects a June 2014 refusal. (District's Brief at 18 and 26.)

[5] After Grievant's marriage, the District advised him that it could add his spouse to his retiree benefits at a cost of $900 per month. Grievant declined. (Arbitration Award at 11; R.R. at 11a.)

2

Grievant sought counsel from the Gateway Education Association (the Association) and, after a lengthy investigation, it filed the subject grievance in January 2016.

Following a hearing at which both parties had the opportunity to present witnesses, testimony, exhibits and conduct cross-examination, the arbitrator rendered the following award: "[Grievant] and his husband . . . must be granted the same retiree benefits as other married couples at the District's expense. This would be as if they [sic] had elected the same married couple coverage at the time of his retirement. There is no other monetary award." (Arbitration Award at 12; Reproduced Record (R.R.) at 12a.) The District filed a petition to vacate arbitration award, which common pleas denied. The District's timely appeal followed.

We review a grievance arbitration under the "essence test." This is a two-part analysis requiring the court to:

> First . . . determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement.

*Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007) [quoting *State Sys. of Higher Educ. (Cheyney Univ.) v. State College Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999)]. The Supreme Court further explained "[t]hat is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Cheyney Univ.*, 743 A.2d at 413. A reviewing court may not overturn an arbitrator's interpretation of the CBA at issue if that "'interpretation can in any rational way be derived from [it], viewed

3

in light of its language, its context, and any other indicia of the parties' intention." *Community College of Beaver Cty. v. Cmty. College of Beaver Cty., Soc'y of the Faculty (PSEA/NEA)*, 375 A.2d 1267, 1275 (Pa. 1977) [quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969)]; *accord Nw. Area Sch. Dist. v. Nw. Area Educ. Ass'n*, 954 A.2d 111 (Pa. Cmwlth. 2008).

Moreover, the essence test does not require that we agree with an arbitrator's interpretation of the CBA. Instead, we look at whether that "interpretation and application of the agreement can be reconciled with the language of the agreement." *Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 38 A.3d 975, 980 (Pa. Cmwlth. 2011). In that regard, the best evidence regarding a dispute is the express language of the CBA. *East Pennsboro Area Sch. Dist. v. Pa. Labor Relations Bd.*, 467 A.2d 1356, 1359 (Pa. Cmwlth. 1983). When an arbitrator ignores the plain language of a CBA, his award cannot be said to rationally flow therefrom and should be vacated pursuant to the essence test. *Greater Nanticoke Area Sch. Dist. v. Greater Nanticoke Area Educ. Ass'n*, 760 A.2d 1214, 1220 (Pa. Cmwlth. 2000).

Mindful that the District's arguments concerning the essence test are intertwined with its other issues, we note that it generally asserts that the award was not rationally derived from the CBA due to its plain language. More specifically, it asserts that the award does not logically flow from the CBA in that it neither contemplated same-sex spouses at the time of Grievant's retirement nor permitted a delay in filing a grievance due to the possibility that the underlying law could change in the future. In addition, it maintains that the timeliness provision is mandatory.

Finally, it maintains that the arbitrator's decision created a bias and inequity for heterosexual couples seeking post-retirement spouse benefits.[6]

There are three cognizable issues on appeal: (1) whether the arbitrator erred in concluding that the grievance was timely filed; (2) whether the arbitrator erred in determining that past practice concerning eligibility was irrelevant; and (3) whether the arbitrator erred in concluding that the District's impairment of contracts issue was without merit.

## Timeliness

Timeliness is a procedural issue and one that an arbitrator may consider unless there is a limitation in the CBA prohibiting him from deciding procedural issues. *Greater Johnstown Area Vocational-Tech Sch. v. Greater Johnstown Area Vocational-Tech Educ. Ass'n*, 521 A.2d 965, 967 (Pa. Cmwlth. 1987). Where a CBA has a timeliness provision, the issue of whether the grievance was timely filed is squarely covered by the terms of the CBA. *Id.* Mindful that the CBA in the present case defines a grievance as an "alleged breach or violation of this agreement[,]"[7] we note that its pertinent provision regarding timeliness, in relevant part, provides:

> If the aggrieved person is not satisfied with the oral disposition of the grievance, a grievance must be filed, in writing . . . within three (3) school days of the alleged occurrence of the grievance or within three (3) school days from when the aggrieved person should reasonably have known or been aware of the existence of said grievance.

---

[6] Obviously, there was no legal impediment to heterosexual marriage before or at the time of Grievant's retirement. If a heterosexual couple wished to be married and add his or her spouse to their healthcare benefits at the District's expense, they could have done so at the appropriate times. In contrast, Grievant could not do so before or at the time of his retirement.

[7] (CBA, Article III, § 3.1; R.R. at 16a.)

5

(CBA, Article III, § 3.6; R.R. at 17a.) "Any grievance not presented within the time limitations of each level shall be considered settled . . . ." (*Id.*, § 3.10(C); R.R. at 19a.)

In addressing timeliness, the arbitrator observed that no procedural defenses were offered during the processing of the grievance and that timeliness was first alleged at the arbitration hearing. (Arbitration Award at 2-3; R.R. at 2-3a.) A party's failure to raise an issue in a labor arbitration setting may result in waiver. *Danville Area Sch. Dist. v. Danville Area Educ. Ass'n/PSEA/NEA*, 754 A.2d 1255, 1260 (Pa. 2000). Nonetheless, he concluded that the grievance was timely filed in that "[i]t could not have been reasonably filed earlier because of the changing legal environment." (Arbitration Award at 9; R.R. at 9a.) He also noted the Grievant's continuing contact with the District for purposes of ascertaining whether it would change its position and Grievant's decision to contact the grievance chair of the Association for clarification and guidance. The arbitrator observed that the grievance chair contacted the PSEA's legal division for guidance and review, which "took time in an ever changing legal environment until same-sex marriage finally became law[.]" (*Id.*) Further, the arbitrator obviously was mindful of the fact that Grievant could neither file nor advance his grievance without the Association.[8] Moreover, the issue of timeliness of a grievance is clearly covered in the CBA, and the arbitrator interpreted the deadlines specified therein to run from such time as it was possible for Grievant act.

Our Supreme Court in *Community College of Beaver County,* 375 A.2d 1267, noted that the essence test standard is one characterized by great deference.

---

[8] The Association's participation and satisfaction is required at all levels of the grievance procedures. (*See id.*, Article III, Grievance Procedures, § 3.6 Level One [building principal or immediate supervisor], § 3.7 Level Two-Superintendent, § 3.8 Level Three-Board of School Directors, § 3.9 Level Four-Arbitration; R.R. at 17-18a.)

6

The arbitrator's award must be "respected by the judiciary if 'the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. . . .' " *Id.* at 1275. Under this standard, we must conclude that this interpretation passes the essence test.

**Past Practice**

Past practice may be considered when the CBA is silent on an issue or does not define or specify a particular matter. *Dep't of Corr.*, 38 A.3d at 981-82. Our Supreme Court has opined that an arbitrator may use evidence of past practice in four situations:

> (1) to clarify ambiguous language; (2) to implement contract language which sets forth only a general rule; (3) to modify or amend apparently unambiguous language which has arguably been waived by the parties; and (4) to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the agreement.

*Id.*

The District maintains that the arbitrator erred in negating the past practice of forbidding retirees from changing coverage decisions that they made at the time of their initial selections, even if they remarried or married for the first time,[9] because he based his decision on pure speculation. Specifically, it contends that it was pure conjecture for the arbitrator to assume that, had Grievant still been employed at the time of *Whitewood*, he would have married and sought to add his spouse on the District's policy at its expense before retiring.

We first note that the fact that an arbitrator *may* use evidence of past practice in interpreting a CBA does not mean that he *must* do so. Here, the arbitrator observed that arbitration decisions since the 1940s have recognized that the one thing

---

[9] Common pleas observed that the past practice pertained only to heterosexual married couples. As a practical matter, before *Whitewood*, this must have been the case.

that can nullify past practice is a change in the underlying condition upon which such a practice is based. He determined that a significant change in both Pennsylvania and federal law regarding same-sex marriage constituted such a change in the present case. (Arbitrator's Award at 11; R.R. at 11a.) Reasoning that Grievant at the time of his retirement was seeking to obtain the same benefits that the District would have afforded a heterosexual married couple but was legally estopped from doing so due to the underlying legal situation, the arbitrator determined that the subsequent change in the law nullified the past practice. (*Id*. at 12; R.R. at 12a.) Specifically regarding Grievant and an assumption as to what he would have done but for the law, the arbitrator found: "Even though during that time, they were unable to lawfully marry in Pennsylvania, they considered themselves married. They lived together, owned property together, had joint billing and held themselves up to be married[.]" (*Id*. at 3; R.R. at 3a.) Accordingly, the arbitrator concluded that, but for the law before and at the time of his retirement, Grievant would have married and sought to add his spouse to his health care benefits at the District's expense. As we noted above, an arbitrator's findings of fact are not reviewable on appeal, and "courts are . . . not to second-guess an arbitrator's findings of fact. . . ." *Neshaminy Sch. Dist. v. Neshaminy Fed'n of Teachers*, 171 A.3d 334, 340 (Pa. Cmwlth. 2017).

### Impairment of Contracts

In pertinent part, the impairment of contracts clause of the United States Constitution provides that no state shall pass any law impairing the obligation of contracts. U.S. Const., art. 1 § 10. The contracts clause in the Pa. Constitution provides: "No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." Pa. Const., art. 1, § 17. "[T]he impairment of contracts clause is not violated by a judicial determination, but only by an enactment by the legislature." *Burns v. Pub.*

8

*Sch. Employees Ret. Bd.*, 853 A.2d 1146, 1146 (Pa. Cmwlth. 2004) [citing *Mariniello v. Shell Co.*, 511 F.2d 853, 859 (3d Cir. 1975)]. *See also Tidal Oil Co. v. Flanagan*, 263 U.S. 444, 451 (1924) (holding: "It has been long settled . . . that the provision . . . protecting the obligation of contracts against state action, is directed only against impairment by legislation and not by judgment of courts.")

The District argues that the award violated those clauses barring contractual impairment by retroactively implementing *Whitewood*. In support, it primarily relies upon our decision in *Danville Area School District v. Danville Area Education Association*, 700 A.2d 549, 551-52 (Pa. Cmwlth. 1997), *rev'd*, 754 A.2d 1255, 1260 (Pa. 2000). In that case, a teacher who retired with twenty-four years of service learned after her retirement that the legislature had passed new legislation amending the Public School Employees' Retirement Code (Code)[10] "to permit early retirement [thereunder] by crediting retirees with extra service time above their actual service time." 700 A.2d at 550. Accordingly, she filed a grievance claiming that she should have received the same retirement benefits as those who retired with over thirty years of service given the post-retirement changes to the Code. *Apropos* here, this Court raised, *sua sponte*, the issue of contractual impairment and held that the retroactive application of the Code was unconstitutional. In reversing, the Supreme Court determined that, where the issue was never presented below, we erred in addressing the impairment of contracts issue "regardless of the accuracy of [our] legal analysis with respect to the constitutional principle of impairment of contract[.]" 754 A.2d at 1259-60.

*Danville* is readily distinguishable. That case involved the purported alteration of existing contractual rights by subsequent legislation, as is directly

---

[10] 24 Pa. C.S. §§ 8101 - 8535.

9

prohibited by the impairments clause. ("No... law…shall be passed…")  That is not the case here, where circumstances were changed by constitutional interpretation in the courts.  Moreover, this constitutional holding did not alter the parties' contract; it merely changed Grievant and his partner's legal right to be married, and affected the arbitrator's interpretation of the CBA, particularly the timeliness provision.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gateway School District,        :
              Appellant     :
                     :
           v.          :    No. 738 C.D. 2017
                     :
Gateway Education Association/   :
PSEA/NEA                 :

## O R D E R

AND NOW, this 28th day of February, 2018, the order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge