576 A.2d 1176

**UPPER ST. CLAIR EDUCATION ASSOCIATION, Appellant**

v.

**UPPER ST. CLAIR SCHOOL DISTRICT, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1990.

Decided June 20, 1990.

Sandra Kushner, with her, Stephen H. Jordan, Rothman, Gordon, Foreman & Groudine, P.C., Pittsburgh, for appellant.

James R. Haggerty, with him, James Q. Harty, Reed, Smith, Shaw & McClay, Pittsburgh, for appellee.

Before COLINS and SMITH, JJ., and BARRY, Senior Judge.

COLINS, Judge.

Upper St. Clair Education Association (Association) appeals an order of the Court of Common Pleas of Allegheny County, which vacated the arbitrator's award and sustained an action of the Upper St. Clair School District (School

District) denying benefits to Edward A. Rusciolelli (grievant). We reverse.

Grievant was employed as a teacher by the School District for about 22 years. The Association is the certified collective bargaining representative for grievant and other professional employees of the School District. The School District and the Association were parties to a collective bargaining agreement (agreement), which was entered into on December 15, 1983, and which expired on the first day of teacher responsibility of the 1986–87 school year. Article XV of the agreement, the subject of this appeal, sets forth the provisions of the Professional Assistance and Development Program (program), which was designed to encourage early retirement in order to provide additional job openings.

Article XV of the agreement reads as follows:

A. A professional employee who wishes to participate in the Professional Assistance and Development Program and notifies the Superintendent and the Association by November 15th of the year in which he/she will enroll in the program will earn compensation as follows: This plan is only available to professional staff members who have ten or more years of service as a teacher in the Upper St. Clair School District and are age 55 or over at the time of retirement, or have twenty years or more of credited service in the PPSERS (Retirement System) and are age 50 or over at the time of retirement.

An amount equal to $2500 for each of the consecutive three school years. For two-year programs the Professional Assistance and Development Program compensation earned will be $2500 for each of the consecutive two years. If the staff member chooses a one-year program, the compensation earned will be $2500 for the year.

The Assistance and Development Program will consist of a maximum of twelve days of professional assignments each year made by the building principal before, during or after the normal school year, such times to be mutually agreed upon. *If a professional staff member is un-*

*able to complete the program, the staff member may
withdraw not later than January 31 of the year preced-
ing the year in which the Professional Assistance and
Development Program is to be completed. The School
District will be reimbursed for the funds previously
paid by payroll deduction in equal monthly install-
ments February through June. This reimbursement
shall include all District expenses less the compensa-
tion rate stated in Article XVI, Section F for work
completed.*

B.  Summarization of the Five (5) Year Plan which cov-
ers the school years 1983–84 to 1987–88 and may be
extended by mutual agreement.

*Professional staff members may choose, during the life
of this agreement, to participate in any of the following
options during the next five years:*

(1) participate during the last three (3) years of employ-
ment by providing notification by November 15th of the
year the employee wishes to begin participation

(2) participate during the last two (2) years of employ-
ment by providing notification by November 15th of the
year the employee wishes to begin participation

(3) participate during the last year of employment by
providing notification by November 15th of that year

(4) participate only in the Medical–Dental Provisions.

C.  *Medical–Dental Provisions*

The School District will provide hospitalization, Major–
Medical, Dental and Pro-rated Prescription Drug until the
employee becomes eligible for Medicare/Medicaid, for the
appropriate plan (family or husband/wife, individual) in
effect at the time of retirement.  The employee will pay
any cost increase.

(Emphasis added.)

On December 19, 1983, grievant submitted a letter to the
School District in which he elected to participate in the
program for a three-year period, i.e., the 1983–84, 1984–85

and 1985–86 school years.[1] Article XV(B)(1). In accordance with the program, grievant's resignation was accepted by the School Board on January 10, 1984, not to become effective until September of 1986. However, after completion of one year of the three-year program, grievant resigned from employment, his last day of work being November 28, 1984.[2] The School District determined that because grievant did not complete all three years of the program, he was not entitled to the medical and dental benefits provided for, nor the $2,500 for the (1983–84) year of work which he had completed.

The Association filed a grievance on January 31, 1985, which proceeded to arbitration. On September 13, 1985, the arbitrator issued his opinion ordering the School District to pay to grievant $2,500 for one year's successful participation in the program, and to reimburse grievant for both the cost of insurance premiums paid by him, as well as for any medical bills which would have been covered under the program. Finally, the arbitrator ordered that grievant be reinstated as a full participant with all entitlements under Article XV(B)(3) [3] of the agreement.

The School District appealed and the trial court vacated the arbitrator's award, concluding that the plain language of Article XV required that grievant complete all three years of the program in order to qualify to receive the benefits. The trial court reasoned that because Article XV provides with specificity the means by which the School District will recoup, through payroll deductions, any funds

1. Grievant's pension rights through the Pennsylvania Public School Employees Retirement System were in no way affected by his participation in this program and he has been receiving a pension since January, 1985.

2. On this same date, the School District Superintendent, the Coordinator of Special Projects and a representative of the Police Department had met with grievant regarding a police investigation of grievant, as a result of allegations of improper conduct made by a student and her parents. The Superintendent informed grievant that if he would not voluntarily resign, he would be immediately suspended and a recommendation for his dismissal would be made to the School Board.

3. We note that the arbitrator's award specifies "Article XV(C)(3)," an obvious typographical error.

paid out as bonuses to teachers who do not complete the entire program, it is clear that the School District is meant to be fully reimbursed for deficient performance on the part of a teacher. This appeal ensued.

The Association raises three issues for our review: (1) whether the trial court erred as a matter of law by reviewing the merits of this dispute; (2) whether the trial court committed error by considering and relying upon matters outside the record; and (3) whether the trial court erred by misapplying the essence test in vacating the arbitration award.

Our scope of review of arbitration awards is very narrow in that an arbitrator's decision may not be disturbed so long as it draws its essence from the collective bargaining agreement. *North East Education Assn. v. North East School District,* 117 Pa. Commonwealth Ct. 19, 542 A.2d 1053 (1988). Further, an arbitrator is the interpreter of terms of the collective bargaining agreement and his decision is entitled to great deference. *Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Assn.,* 520 Pa. 197, 553 A.2d 913 (1989). Under the essence test, we must determine whether an arbitrator's interpretation can, in any rational way, be derived from the agreement, viewed in light of its language, its content and other indicia of the parties intentions. If so, we must uphold that interpretation unless it is manifestly unreasonable. *Id.*

The Association argues that under the essence test, the trial court improperly reviewed the merits of this matter. We disagree. It is necessary, when applying the essence test, in order to determine whether an arbitrator's interpretation can rationally be derived from the agreement, or is manifestly unreasonable, to review the merits of the matter. We hold the trial court here properly conducted such a review and, therefore, committed no error of law in doing so.

The second issue presented raises the contention that the trial court improperly considered matters relating to the accusations of improper conduct made against grievant. The Association maintains that under the essence test, a court has no authority to review matters outside the parameters of the evidence submitted at the arbitration hearing. This contention is spurious because the circumstances surrounding grievant's resignation, while not germane to a resolution of this matter, are contained in the record.

It is also alleged that the trial court improperly based its decision on public policy considerations regarding the misconduct charges against grievant and that it, therefore, should be held invalid on that basis. A close scrutiny of the trial court's opinion renders this allegation meritless. In fact, the trial court specifically stated that "although certain accusations had been made against [grievant], there was no hearing—only a private meeting—and no findings on the accusations made. Therefore, the circumstances surrounding [grievant's] abrupt resignation are not determinative of the issue here."

As regards the Association's final contention, we must agree that the trial court committed error in substituting its interpretation of the agreement for that of the arbitrator. Even if the trial court's interpretation is a reasonable one, under the essence test, it cannot be substituted for the reasonable interpretation of the arbitrator. *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988).

Grievant testified before the arbitrator that it was his understanding that he was to complete the program in three steps and at the end of each step or year, he was to receive payment. The Coordinator of Special Projects for the School District testified that he is in charge of administration of the agreement on a day to day basis. He stated that it was his understanding that if a teacher signs up under Article XV and then is unable to complete the program, he would be dropped and have to return any money paid by the employer under the program, less reimbursement for work

completed at the hourly rate specified in the agreement and would not be eligible for the Blue Cross/Blue Shield benefits provided for thereunder. He further stated, however, that he assumed that a teacher who dropped out of the program would still be teaching, having not retired as expected. Grievant here, as of his resignation, clearly was no longer teaching and, consistent with the intent behind Article XV, his position remained open to be filled by another.

It is undisputed that the intent behind the inclusion of Article XV in the agreement was to encourage early retirement by those teachers who had been teaching for a number of years and who might be contemplating retirement. Based upon consideration of this intent and the clear language of Article XV(A) of the agreement, the arbitrator concluded that a teacher *may* remove himself from the program by failing to retire at or before the date projected when the teacher entered into the program. The language throughout Article XV gives sole discretion to the teachers as to whether to participate and whether to withdraw from the program and expressly provides the method of paying back the benefits received under those circumstances. The arbitrator was not persuaded by the School District's argument that because grievant resigned under threat of removal, that his resignation removed him from participation in Article XV.

The arbitrator reasonably concluded that (1) grievant did not violate the intent behind Article XV, but merely resigned earlier than his originally projected date; (2) grievant resigned in order to avoid dismissal and possible arrest, but did not intend to remove himself as a participant in the Article XV program; and (3) grievant met the requirements of Article XV(B)(3) [4] by having participated during his last year of employment and having provided notification prior to November 15 of that last year. We conclude the arbitra-

**4.** This subsection provides for the option to participate in the program for one year.

tor's interpretation of the agreement was reasonable and, therefore, was improperly vacated by the trial court.

Accordingly, we reverse the order of the trial court.

## ORDER

AND NOW, this 20th day of June, 1990, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is reversed.

CRUMLISH, Jr., former President Judge, did not participate in the decision in this case.