634 A.2d 276

**AUSTIN AREA EDUCATION ASSOCIATION, PSEA/NEA, Appellant,**

v.

**AUSTIN AREA SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Argued Dec. 15, 1992.

Decided Nov. 15, 1993.

William A. Hebe, for appellant.

Stephen S. Russell, for appellee.

Before DOYLE and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

Austin Area Education Association (Association) appeals an order of the Court of Common Pleas of Potter County, which affirmed an arbitrator's award entered in favor of the Austin Area School District (District).

The relevant facts are as follows. On June 30, 1989, the existing collective bargaining agreement (CBA) between the District and the Association expired. On October 11, 1989, the parties, during negotiations for a new CBA, reached a tentative agreement regarding the total amount of money that the District was obligated to spend for teacher salaries in the upcoming years. The parties agreed upon $231,600 as additional funding which was to be spread out over a period of four years. This sum was to be broken down to produce an average increase of $2,400 per employee or 9.8%, whichever was greater, per year, and was arrived at by dividing the total sum of new monies by 24.125 which represented the number of bargaining positions in the District.

The tentative agreement between the parties also provided that the Association would take this $231,600 amount and itself prepare a salary schedule, or matrix, to implement the agreement which matrix would include twenty vertical "steps" and five horizontal categories. The Association prepared the salary schedule matrix and also developed a spreadsheet[1] that included the names of the 26 teachers in the bargaining unit

---

1. The District offered no reason why it left the development of the salary schedule matrix and spreadsheet to the Association. However, the arbitrator found that prior to the present labor agreement there did not exist a salary schedule matrix, which was common in most school district agreements. Since the 1970's the District and the Association had always negotiated salary increases across-the-board, with no apparent consideration for years of service. Thus, in previous years, a teacher's base salary included credits earned beyond a bachelor's degree but did not include years of service.

which considered the teachers' previous salaries as well as their projected salaries over the life of the new CBA.[2] The new teachers' new salaries were initially determined by placement on the spreadsheet developed by the Association. The teachers were then assigned to a "step" on the matrix based upon their placement on the spreadsheet. Thus, without reference to the spreadsheet, it would be impossible to determine the starting point for any bargaining unit member.

On February 6, 1990 the parties signed the new CBA which did not internally contain, or have attached to it, the spreadsheet prepared by the Association. After the new CBA was signed, however, all members of the bargaining unit were paid salaries in accordance with their placement on the spreadsheet and salary schedule matrix.

On August 21, 1990, the District, after a question was raised as to whether two teachers, Patricia Denniston and William Harrier, were being paid too much money under the new CBA, unilaterally reduced the salary step placement for Denniston and Harrier by one step each.[3] Appropriate grievances were filed and the matter was processed to arbitration pursuant to Section 903 of the Public Employe Relations Act, commonly known as Act 195 or PERA.[4] The Arbitrator, by

The new salary matrix prepared by the Association sought to rectify this predicament by rewarding teachers for years of service. The new salary matrix contained five horizontal categories labeled "B.S., B + 24, M.S./MEQ, M + 12 and M + 24" (representing levels where a teacher would be placed according to educational achievement) and vertical steps numbered 1 through 20 (representing different levels of monetary compensation). A provision in the new CBA stated that once placed on a particular step on the matrix, each teacher would advance one vertical step for each subsequent year of actual service with the District.

2. The spreadsheet developed by the Association included the names of the 26 teachers and included columns representing 1988–89 "Base Salary," "Salary Guarantee," "Total Salary," and "Step Placement." The spreadsheet also included the placement of each teacher up to and including the last year covered by the new CBA, 1992–93.

3. Denniston was initially placed and paid at "step 12" on the salary matrix, but, as of August 22, 1990, was reduced to "step 11." Likewise, Harrier, who was placed and paid at "step 9," was reduced one step to "step 8" on the same day.

4. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.903.

award dated August 16, 1991, denied the grievances, which, in effect, affirmed the District's decision to reduce Denniston and Harrier by one step each. The Association then petitioned for review of the Arbitrator's award in the court of common pleas. By order dated March 24, 1992, the court of common pleas confirmed the award. This appeal followed.

■ Before reviewing the merits of the arbitrator's award in the instant case, we once again articulate the appropriate scope of judicial review. The standard of review for arbitration awards under PERA is that found in section 7302(d)(2) of the Uniform Arbitration Act (UAA), 42 Pa.C.S. § 7302(d)(2),[5] which is essentially a determination of whether the award draws its essence from the collective bargaining agreement or was manifestly unreasonable. *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977); *Bristol Township Education Ass's v. Bristol Township School District*, 74 Pa. Commonwealth Ct. 445, 460 A.2d 387 (1983).[6] Thus, we are confined to a determination of whether the arbitrator's decision could rationally be derived from the collective bargaining agreement, viewed in light of its lan-

5. Section 7302(d)(2) of the UAA provided:
   (d) Special Application.— ...
   (2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.
   42 Pa.C.S. § 7301(d)(2).

6. We note that the "essence test" is, in the opinion of our Supreme Court, the equivalent of the judgement N.O.V. standard provided by Section 7302(d)(2) of the UAA. In *Community College*, our Supreme Court stated that "[w]hile introduction of the 'n.o.v.' concept into the field of arbitration may have been a new departure, it is hardly a radical change, nor does it dictate that a much closer or different scrutiny of an arbitration award will be available than under the [essence test]." 473 Pa. at 589–90, 375 A.2d at 1273. Moreover, our Supreme Court has stated that subsumed within the "essence test" standard of review is a requirement that the arbitrator's award cannot be manifestly unreasonable. *Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989).

guage, its context and any other indicia of the parties' intention. *See American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO v. City of Reading,* 130 Pa. Commonwealth Ct. 575, 568 A.2d 1352 (1990); *In the Matter of the Arbitration Between James Shoemaker and the City of Scranton,* 59 Pa.Commonwealth Ct. 141, 428 A.2d 1048 (1981).

The specific question presented to the arbitrator was whether or not the spreadsheet, prepared by the Association, was part of the CBA. The arbitrator found that, although it was consulted frequently in the contract negotiations, the spreadsheet was *not* part of the CBA and, accordingly, denied the grievance. The arbitrator in his award, however, actually referred to the spreadsheet and its role in the negotiations as an indicia of the parties' intent regarding where each member of the bargaining unit was to be placed on the salary matrix which *was* part of the CBA.

On appeal, the Association argues that the arbitrator's award does not draw its essence from the CBA but, rather, reaches to information outside the agreement, *i.e.,* the spreadsheet, to justify an absurd result. On the other hand, the District takes the position that the arbitrator's award draws its essence from the agreement because, after being presented with two reasonable interpretations of the dispute, the arbitrator properly used the spreadsheet as a guide to determine the parties intent. The District states the parties bargained for the decision of an arbitrator and we should not disturb the arbitrator's decision by interpreting the CBA differently.

■ After reviewing the entire record, we conclude that the arbitrator's award is manifestly unreasonable and does not draw its essence from the CBA. The arbitrator erred by interpreting the spreadsheet that outlined the names, initial salary grades and steps for each teacher, which he expressly concluded was *not* within the four corners of the CBA.

During the grievance proceeding, the arbitrator had to construe the effect of a provision of the CBA to determine the

correct 1989–90 salary steps for the grievants. This provision stated:

**APPENDIX A**

1989–90 to 1992–93 SALARY SCHEDULE NOTES

SECTION B. The criteria used to determine the salary of a professional employee covered under this Agreement shall be the proper step and category of educational achievement or certification. It is agreed that the step used for salary determination for the 1989–90 contract year shall be regarded as the proper step for each professional employee for that year *in accordance with the step placement chart herein attached.* In each year of this Agreement thereafter, each bargaining unit member shall advance one (1) step on the salary schedule for each subsequent year of actual service in the [District].

(Emphasis added).

The arbitrator found that there was no reference to the spreadsheet prepared by the Association, nor was the spreadsheet attached to the CBA. The arbitrator stated that if the spreadsheet had been referenced or attached, it would then be a permanent part of the CBA. While expressly concluding that the spreadsheet prepared by the Association was *not* part of the CBA, he nevertheless, concluded that:

The parties had agreed that a salary matrix would be agreed upon which could contain 20 vertical steps, with no credit for years of service. The parties also agreed that the average salary increase would amount to $2,400 or 9.8% of base salary, whichever was higher. Additionally, when the new salary was determined, the salary would then be plugged into the step closest to, but not less than, the amount on the appropriate step of the salary matrix and in accordance with the number of earned credits beyond a Bachelor's degree.

The Association claims that there were other qualifying factors that led to the placing of [the grievants] on the disputed steps. However these factors were never explained or supported by any documents, other than [a]

statement that there was a conscious effort by the Association to reward long-term teachers.

There is nothing on the record to show that the School Board ever agreed to negotiate an additional salary adjustment beyond that which may occur when the new salary would be plugged into the salary matrix.

The difficulty with the arbitrator's award is that *he interpreted not the salary matrix but the spreadsheet,* that is, how each teacher came to be placed at a particular place on the salary matrix (by transfer from the spreadsheet), something which the District *had left up to the Association* alone to perform. While it would be impossible to determine the starting point for each member of the bargaining unit on the salary matrix without reference to the spreadsheet, to reinterpret the spreadsheet as the arbitrator did would mean that the District would be obligated to spend less than the $231,600 in new funding which it obligated itself to provide.[7] Moreover, while we recognize the arbitrator's power to use the spreadsheet as an indicia of the parties intent, and that the award would lack rational common sense without an underlying reference to the individual names which had to be "plugged in" to the matrix, the arbitrator explicitly found that the spreadsheet was not made a part of the CBA. His interpretation of it was therefore, error.

Based upon this fact, we hold that the arbitrator's decision could not in any way be rationally derived from the CBA. While we generally afford great deference to an arbitrator's decision, *see, e.g., Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Ass'n,* 520 Pa. 197, 553 A.2d 913 (1989), an arbitrator's power is confined to interpretation and application of the agreement itself. *United Steelworkers of America*

---

7. In the award, the Arbitrator found that the parties had agreed to an aggregate pay increase of $231,600.00 to be spread out over a period of four years. This award negates the agreement between the parties because now grievants will be paid less than was agreed upon for a period of three years; the net result being that less than $231,600.00 would be paid by the District to the Association members. This result would obviously violate the agreement of the parties.

*v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

Accordingly, we reverse the order of the court of common pleas and vacate the arbitration award and order the District to reinstate the salaries of Denniston and Harrier to the appropriate step (Denniston Step 12 and Harrier Step 9) where they were placed on the salary matrix, with backpay.

## *ORDER*

NOW, November 15, 1993, the order of the Court of Common Pleas of Potter County in the above-captioned matter is hereby reversed and the arbitrator's award is vacated. The District is ordered to reinstate the salary level for the individual teachers consistent with this opinion.

PELLEGRINI, Judge, concurring.

I concur with the majority that the arbitration decision denying the grievance of the Austin Area Education Association from the Austin Area School District's (School District) unilateral decision to reduce by one grade the pay of two teachers does not draw its essence from the Agreement but for a different reason.[1] I would hold that the School District is estopped from asserting that this raise was improper. As the School District's brief forthrightly points out:

> Early in November, 1989, the Association's negotiator met with the School District's negotiator to review the memorandum of agreement and salary schedule, in addition to a spreadsheet showing specific salaries for each member of the bargaining unit, for the term of the agreement, 1989–1993.[2]

> Later in the month of November, the chief negotiator for the Association met with Superintendent Philp to review the salary schedule and spreadsheet [containing the two step-

---

1. For an explanation of the "essence test", *see Pennsylvania State Police v. Pennsylvania State Police Troopers' Association (Trooper James Betancourt)*, 159 Pa. Commonwealth 489, 633 A.2d 1278 (1993).

2. It is undisputed that additional pay is not awarded for years of service.

raises for the two teachers]. Superintendent Philp was not satisfied with what she saw and contacted the School District's chief negotiator, who advised her that she had to accept what was agreed upon. Superintendent Philp stated at the arbitration hearing that she then called the Pennsylvania School Board Association (PSEA) and was told, in her words, "If the chief negotiator has agreed to the schedule you then must live with it." However, the PSEA advised her to include an indemnification clause in the agreement. The indemnification clause was included in the tentative agreement at a meeting held December 1, 1989.

The School District knew that this was the proposal and its Superintendent realized the raises might be improper and secured protection through an indemnification clause in the Agreement. The School District, when it signed the Agreement, agreed that the two teachers were going to receive raises that they were otherwise not entitled. Accordingly, it is estopped from asserting otherwise.