### Centennial School District v. Centennial Education Association

*A. Martin Herring,* for plaintiff.
*Ellis H. Katz,* for defendant.

BIEHN, *P.J.,* August 23, 1994—Centennial School District filed a petition before this court to vacate an arbitration award in favor of the Centennial Education Association. After oral argument and a review of the parties' memoranda of law, we find that the arbitration award must be upheld.

The district is a political subdivision of the Commonwealth of Pennsylvania organized and operating under the authority of the Public School Code of 1949, 24 P.S. §11-1101 et seq. The association is an employee organization certified by the Pennsylvania Labor Relations Board as the exclusive bargaining representative for certain professional employees of the district in accordance with the Public Employee Relation Act, 43 P.S. §1101.101 et seq.

The district and the association were parties to a collective bargaining agreement, effective July 1, 1988 through June 30, 1992. The agreement contained, in Article V, a grievance procedure for resolution of grievances arising out of the interpretation of the agreement, culminating in arbitration as required by PERA.

On June 5, 1992, a grievance was initiated on behalf of Suzanne (a/k/a Susan) Clark by the association. Ms. Clark had requested a sabbatical leave and then had attempted to rescind her request. The district refused to allow her to do so.

The grievance was denied by the district at each step of the grievance procedure and was subsequently appealed by the association to arbitration. A hearing

was held on December 10, 1992. On January 20, 1993, the arbitrator rendered an award in favor of the association. Hence, the district has appealed to this court.

The arbitrator found 1) that the grievance was arbitrable as it fell "under the scope of both the interpretation and application concepts of the contract grievance definition," and 2) that "sabbatical leave is not a discretionary right of the district, but rather an appropriate subject for bargaining." (Opinion and award, January 20, 1993, pp. 11-12.) Finally, the arbitrator dealt with the question of whether or not the school board violated a binding past practice when it denied the request of the grievant to rescind her approved sabbatical leave.

The arbitrator stated:

"... After a careful study of the record, the arbitrator cannot find any justification to conclude that it was the intention of the parties, and certainly not that of the fact finder, that by adopting the 1976 fact finding recommendation dealing with past practice, all future past practices were to be eliminated. Indeed, only the strongest, most direct, and clearly written contract language in a collective bargaining agreement would allow such a conclusion to be drawn. The present contract contains no language addressing past practice in any context....

"In 1982, the issue that arose concerning the sabbatical leave policy that the association and the district could not agree upon had two distinct points of view. The district holds that the policy is a clear example of its resistance to the association's attempts to intrude on its prerogatives in the area of rescinding sabbatical leave in that the final version did not include anything on rescission. This difference between the parties would indicate that there was equivocation concerning the practice. The association argues that the district was the aggressor in 1982, in attempting to limit sabbatical leave

by including language that would place a deadline on when a rescission could be requested. This would indicate that prior to 1982, the district had accepted the practice of regularly granting requests for rescission, tried to change it in 1982, could not, and so the practice continued. Here is a classic case of two credible, but totally different perceptions of the same event. It is clear that in 1982, the parties did not share the same point of view on rescission. There is simply an insufficient amount of evidence concerning the 1982 incident for the arbitrator to choose one version over the other.

"However, the association has provided evidence documenting Centennial School District sabbatical leave rescission requests from January 1984, through January 1992. Of the 18 requests for rescission of approved sabbatical leave over this period of time, all were approved by the board. At minimum then, for eight years there was a fixed and established, unequivocal practice of granting every request for rescission from sabbatical leave, up to the request of the grievant." (Opinion and award, January 20, 1993, pp. 14-15.)

Consequently, the arbitrator found that all requests for rescission of approved sabbatical leaves were granted by the school board from January 1984 to January 1992 and that this practice was something the employees could reasonably expect would continue. The arbitrator concluded that all of the conditions of a binding past practice had been met. (Opinion and award, January 20, 1993, p. 16.)

The arbitrator then entered the following award:

"The grievance is sustained. The school district did violate Article XII, B-7, of the collective bargaining agreement and past practice by denying the request of the grievant, Susan Clark, to rescind her sabbatical leave. The grievant shall be granted her request for rescission of sabbatical leave effective May 1992. Her

file shall be purged of any record of her having used sabbatical leave for school year 1992-1993. The grievant shall be made whole for all wages and all benefits, including but not limited to sick leave and personal leave." (Opinion and award, January 20, 1993, p. 17.)

We note at the outset that our review of an arbitrator's decision is highly circumscribed.

"... It is well settled that, in reviewing an arbitrator's interpretation of a collective bargaining agreement, broad deference is to be accorded the arbitrator's decision. This is due to the fact that the parties bargained for an arbitrator's interpretation, not a court's, hence, the mere fact that the agreement is subject to other interpretations does not warrant judicial intervention into the arbitrator's realm.

"The so-called 'essence of the collective bargaining agreement' test has been frequently enunciated by this court as the standard governing judicial deference to arbitrators' decisions.... It requires that an arbitrator's interpretation be upheld if it can, in *any rational way,* be derived from the language and context of the agreement.... When an issue, properly defined, is within the terms of a collective bargaining agreement and the arbitrator's decision can in a rational way be derived from the terms of the agreement, one can say that the decision draws its 'essence' from the agreement, and reversal is not warranted even if a court believes that the decision, though rational, is incorrect." (citations omitted) (emphasis in original) *Greater Johnstown Area Vocational-Technical School v. Greater Johnstown Area Vocational-Technical Education Association,* 520 Pa. 197, 199-200, 553 A.2d 913, 914-15 (1989).

The first issue before this court is whether the grievance is arbitrable. The collective bargaining agreement contains in Article V the procedure for resolution of grievances arising out of the interpretation of the agreement. It reads in part as follows:

## "V. GRIEVANCE PROCEDURE

"(A) It is recognized that on occasion a grievance may arise between the board and one or more of its professional employees, or between the board and association, relating to the interpretation, operation or application of this agreement. Accordingly, a grievance procedure is described herein below for the orderly resolution of such grievances. Nothing contained in this procedure or in this agreement shall in any way abrogate or curtail a professional employee's right to pursue any available processes or remedies provided by the School Code." (Exhibit A, agreement, July 1, 1988 through June 30, 1992, p. 5.)

The procedure contains four steps. If no resolution is reached at the end of step four, the association may elect to arbitrate the grievance in accordance with Article VI.

## "VI. ARBITRATION

"(A) In the event a grievance cannot be resolved within the four step grievance procedure described in this agreement, this grievance may be referred to the American Arbitration Association for resolution by a single arbitrator in accordance with the rules and procedures of the aforesaid American Arbitration Association.

"(B) The language used in this agreement shall be binding upon the arbitrator.

"(C) The decision of the arbitrator shall be final and binding." (Exhibit A, agreement, July 1, 1988 through June 30, 1992, p. 7.)

The association, on behalf of Ms. Clark, filed its grievance alleging that the district "... unilaterally, without prior notice, changed its practice of allowing employees to rescind sabbatical leave requests in violation

of Article XII, section 7, and past practice." (Joint exhibit no. 2 of exhibit B.)

That provision, dealing with sabbatical leave, reads as follows:

"(7) Requests for sabbatical leave of absence and leave without pay must be referred to the school board for action—such leaves to be granted according to the School Laws of Pennsylvania. Sabbatical leave requests should be filed with the superintendent by January 1 of the year prior to the school year in which the request is being made in order that the cost of such sabbatical leave will be reflected in the school budget. (Exhibit A, agreement, July 1, 1988 through June 30, 1992, p. 22.)

The district's first argument is that the grievance is not arbitrable because it does not meet the definition of a grievance as set forth in Article V. The district bases this contention on section 7 above and states, "[E]ven a cursory review of the contract language establishes that it is limited exclusively to *requests* for sabbatical leave. The collective bargaining agreement is completely silent on the issue of requests for rescission of a sabbatical leave once granted." (District's memorandum of law, p. 5.) (emphasis in original)

We find this argument to be totally without merit. Pennsylvania law favors the submission of public employees grievances to arbitration. There exists a clause in the collective bargaining agreement under review which addresses sabbatical leaves. Therefore, sabbatical leaves are a proper subject for arbitration. "[W]here, as here, an arbitrator has interpreted a collective bargaining agreement in favor of the arbitrability of the grievance before him, a reviewing court should be slow indeed to disagree." *County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 31-32, 381 A.2d 849, 851 (1977). (footnote omitted)

In the instant case, the provision concerning sabbatical leaves does not specifically mention rescission; however, neither does it expressly exclude rescission from arbitration. After reviewing Articles V and VI of the collective bargaining agreement, we conclude that the arbitrator was not in error when he found the grievance to be arbitrable.

The second, and more weighty issue, for this court to address is whether the arbitrator's interpretation can, in any rational way, be found to be derived from the language and context of the collective bargaining agreement. In other words, does it meet the "essence test?" *Greater Johnstown Area, supra* at 199-200, 553 A.2d at 914-15.

The collective bargaining agreement is silent as to rescission of sabbatical leaves. The arbitrator consequently relied on past practice to interpret the agreement.

The district argues that the arbitrator incorrectly relied upon past practice. The district recognizes that the concept of past practices may be used in arbitrations. (District's memorandum of law, p. 6.)

"A recognized commentator in the field of labor law identifies four situations in which evidence of past practice is used in arbitrations: (1) to clarify ambiguous language; (2) to implement contract language which sets forth only a general rule; (3) to modify or amend apparently unambiguous language which has arguably been waived by the parties; and (4) to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the agreement." *County of Allegheny, supra* at 34, 381 A.2d at 852. (footnotes omitted)

The district argues that it was unreasonable for the arbitrator to rely on past practices because the collective bargaining agreement did not contain a clause referring to past practices. The district relies on the fact that the 1974 to 1976 collective bargaining agreement con-

tained language incorporating past practices. However, the 1988 to 1992 agreement did not contain such language.

The district relies on the *County of Allegheny* case, *supra,* in which the Supreme Court reversed the arbitrator's award when he relied on past practices in the face of a broad integration clause to the effect that the agreement as written was the complete agreement between the parties.

We find *County of Allegheny* to be distinguishable from the instant case. The district contends that the case before us presents "... the functional equivalent of a [sic] integration clause." (District's memorandum of law, p. 8.) However, the fact is that there is no integration clause in the 1988 to 1992 agreement. In addition, although the parties have addressed past practices during the course of negotiations, they have not included any language eliminating past practices as a consideration for the arbitrator.

In *County of Allegheny,* the court stated:

"In deciding as we do, we hold *only* that where a collective bargaining agreement not only makes no mention whatever of past practices but does include a broad integration clause, an award which incorporates into the agreement, as separately enforceable conditions of the employment relationship, past practices which antedate the effective date of that agreement cannot be said to 'draw its essence from the collective bargaining' agreement.... We hasten to add that courts are not to become super-arbitrators and are bound to defer to the arbitrators' findings relative to the intent of the parties as the arbitrators perform their task of interpreting labor contracts negotiated under PERA." *County of Allegheny, supra* at 38, 381 A.2d at 854. (emphasis added) (footnote omitted) (citations omitted)

In the instant case, the arbitrator's reliance on past practice to interpret the collective bargaining agreement was not an error.

"To state the matter more precisely, where a task of an arbitrator, PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and *is to be respected by the judiciary if 'the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention....' " Community College of Beaver County v. Community College of Beaver County, Society of the Faculty,* 473 Pa. 576, 593-94, 375 A.2d 1267, 1275 (1977). (emphasis added) (citation omitted)

The arbitrator relied on the past practice of the district of granting rescission of sabbatical requests over an eight year period. We believe his decision met the "essence test" in that the collective bargaining agreement contained no integration clause nor any language eliminating past practices as a consideration. The arbitrator's decision does not conflict with any language of the agreement.

We believe that the arbitrator's interpretation has a rational basis in the agreement. Consequently, we are not free to substitute our own interpretation for his. If we assume the function of the arbitrator, then we defeat the purpose of arbitration as a speedy and fair substitute for court litigation. Accordingly, we enter the following order.

## ORDER

And now, August 23, 1994, it is hereby ordered and directed that the petition to vacate the arbitration award is denied.