**SCHOOL DISTRICT OF THE CITY OF ALLENTOWN, Appellant,**

v.

**HOTEL AND RESTAURANT EMPLOYEES INTERNATIONAL UNION, LOCAL NO. 391, AFL–CIO.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1994.
Decided Jan. 6, 1995.

Jeffrey M. Zimskind, for appellant.

James T. Huber, for appellee.

Before SMITH and NEWMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The School District of the City of Allentown (school district) appeals a Lehigh County Court of Common Pleas decision which upheld an arbitrator's award in favor of certain members of the Hotel and Restaurant International Union Local No. 391, AFL–CIO (union).

The nub of the controversy in this appeal concerns the interpretation of the collective bargaining agreement (cba) between the school district and the union which became effective July 1, 1991 and expired June 30, 1994.

The section of the cba that is in dispute is reproduced here:

ARTICLE XIX—SALARIES
Effective July 1, 1991

| Classification | 1991–92 | Per Hr. | 1992–93 | Per Hr. | 1993–94 | Per Hr. |
|---|---|---|---|---|---|---|
| Sr. High Cook (8 hrs.) | $14,440.00 | $9.50 | $15,747.20 | $10.39 | $17,160.80 | $11.29 |
| Middle School Cook (8 hrs.) | 14,212.00 | 9.35 | 15,488.80 | 10.19 | 16,887.20 | 11.11 |
| Elementary Cook (8 hrs.) | 13,984.00 | 9.20 | 15,245.60 | 10.03 | 16,568.00 | 10.90 |
| Asst. Cook Middle/Sr. High (6½ hrs.) | 11,016.20 | 8.92 | 12,004.20 | 9.72 | 13,078.65 | 10.46 |
| Asst. Cook–Elem. (6 hrs.) | 10,032.00 | 8.80 | 10,944.00 | 9.60 | 11,924.40 | 9.35 |
| Helper (Hrs. Vary) | ......... | 8.30 | ......... | 8.85 | ......... | 9.35 |

Specifically, it is the last line of this section which is at issue. The school district contends that, because the line where it states "Helper (Hrs. Vary)" has space marks instead of a figure listed in the year column, the school district was not obliged to pay helpers for any specific number of days per year, but was only obliged to pay them for the hours actually worked. The union, on the other hand, contends that helpers had always been paid on a salary basis, which was based on 190 days pay for 186 days worked, and that the omission of a figure in the year column is of no significance.

In order to elucidate the issue, we quote the previous collective bargaining agreement, executed in 1988, which designated the various type of helpers and their respective salaries. The school district does not dispute that the helpers were paid on the basis of 190 days pay for 186 days worked under that agreement, which reads in pertinent part:

ARTICLE XIX—SALARIES
Effective July 1, 1991

| Classification | 1988–89 | Per Hr. | 1989–90 | Per Hr. | 1990–91 | Per Hr. |
|---|---|---|---|---|---|---|
| Sr. High Cook | $12,068.80 | $7.94 | $12,616.00 | $8.30 | $13,178.40 | $8.67 |
| Middle School Cook (8 hrs.) | 11,840.80 | 7.79 | 12,388.00 | 8.15 | 12,950.40 | 8.52 |
| Elementary Cook (8 hrs.) | 11,719.20 | 7.71 | 12,160.00 | 8.07 | 12,828.80 | 8.44 |
| Asst. Cook Middle/Sr. High (6½ hrs.) | 9,040.20 | 7.32 | 9,484.80 | 7.68 | 9,941.75 | 8.05 |
| Asst. Cook–Elem. (6 hrs.) | 8,208.00 | 7.20 | 8,618.40 | 7.56 | 9,040.20 | 7.93 |
| 8 Hour Helper | 10,746.40 | 7.07 | 11,293.60 | 7.43 | 11,856.00 | 7.80 |
| 7½ Hour Helper | 10,074.75 | 7.07 | 10,587.75 | 7.43 | 11,115.00 | 7.80 |
| 7 Hour Helper | 9,403.10 | 7.07 | 9,881.90 | 7.43 | 10,374.00 | 7.80 |
| 6½ Hour Helper | 8,731.45 | 7.07 | 9,176.05 | 7.43 | 9,633.00 | 7.80 |
| 6 Hour Helper | 8,059.80 | 7.07 | 8,470.20 | 7.43 | 8,892.00 | 7.80 |
| 5½ Hour Helper | 7,388.15 | 7.07 | 7,764.35 | 7.43 | 8,151.00 | 7.80 |
| 5 Hour Helper | 6,716.50 | 7.07 | 6,058.50 | 7.43 | 7,410.00 | 7.80 |
| 4½ Hour Helper | 6,044.85 | 7.07 | 6,352.65 | 7.43 | 6,669.00 | 7.80 |
| 4 Hour Helper | 5,373.20 | 7.07 | 5,646.80 | 7.43 | 5,928.00 | 7.80 |

The arbitrator succinctly but completely set forth the contentions of the parties:

*Position of the Union*

The Union argues that the District has made an improper unilateral change in the pay of General Kitchen Helpers. It denies that the parties ever negotiated over the change or that the Union, by failing to contest the District's proposal on the salary schedule, agreed to so dramatic a change in the compensation of these employees. It points to a number of provisions of the collective Agreement which still refer to "salary" or "190 days" and argues that if so drastic a change were intended the parties would have negotiated over its effects. The Union claims that it never understood that the District was proposing anything more than a cleaning up of the language of the salary schedule with no substantive implications. It asks that the affected employees be restored to their former, salaried status and that any monies due them plus interest be paid forthwith.

*Position of the District*

The District argues that the Union knew from its proposals and opening remarks that it wished to restructure both the hours and the method of compensation of Helpers to eliminate payment for time not actually worked. The District asserts that the Union knew or should have known of the implications of its proposals and having accepted them and incorporated them in the Agreement may not now complain that it does not like the consequences of its acceptance of an unambiguous change in the method of compensation. Admitting that not every ramification of the change was worked out, the District, nonetheless, concludes that the Union is bound by its acceptance of the new pay schedule for Helpers.

(Arbitrator's decision, May 13, 1992, p. 5).

The arbitrator decided that the union's position was more plausible and sustained the grievance. The common pleas court applied the "essence test," *see Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977), and upheld the arbitrator's decision.

In this appeal, the school district contends the cba is unambiguous and therefore the arbitrator's award did not draw its essence from the cba. The school district asserts that a reversal is required because the arbitrator improperly relied upon the prior, 1988 agreement. *See Austin Area Education Association, PSEA/NEA v. Austin Area School District*, 159 Pa.Commonwealth Ct. 640, 634 A.2d 276 (1993).

The union, on the other hand, contends that the 1991 cba is ambiguous and, therefore, it was critical to consider evidence on whether the issue of the helpers' yearly-based salary was negotiated. The arbitrator found the issue was not negotiated and fashioned his award based on prior practice that indicated the parties' intentions. The union contends that the arbitrator's award thus met the essence test.

We address the school district's principal argument that, because the 1991 cba unambiguously states that helpers do not receive a yearly wage, the arbitrator could not reasonably have construed it to support the award. Preliminarily, on this issue, we refer to the following discussion in *Community College* on ambiguity and its place in the determination of an arbitration award.

On the theory that the collective bargaining agreement involved here is "ambiguous" . . . it would be possible, applying the well-settled common law contract classification . . . to say that the arbitrator's award is based on a finding of fact (interpretation of an ambiguous writing) and therefore not to be disturbed on review if supported by language appearing in the contract. To do so, however, would imply that the standard of review of an arbitrator's interpretation of a collective bargaining agreement turns on the common law question of whether the agreement is "ambiguous" and therefore to be interpreted by the finder-of-fact (jury) or "unambiguous" and to be interpreted by the court. We are satisfied that this is not the correct approach.

It has long been accepted in contract law that an ambiguous written instrument presents a question of fact for resolution by the finder-of-fact, whereas the meaning of an unambiguous written instrument presents a "question of law" for resolution by the court. As the authorities in the field of contracts make clear, however, the latter exercise is also in actuality a factual, not a legal decision. For a variety of reasons the common law has long thought it best to leave to the court rather than to the jury the essentially factual question of what the contracting parties intended. This fact-finding function exercised by the court is denominated a "question of law," therefore, not because analytically it is a question of law but rather to indicate that it is the trial judge, not the jury, to whom the law assigns the responsibility for deciding the matter. All questions of interpretation of written instruments and agreements, in other words, are questions of fact, some in ordinary civil litigation resolved by the jury (ambiguous writings) and others resolved by the trial judge (unambiguous writings)....

In applying the "n.o.v." standard of review of 5 P.S. § 171(d) ("award is against the law ...") to arbitration awards, we must therefore analyze the role played by the arbitrator in interpreting collective bargaining agreements. From what we have just said, it is clear that the arbitrator in all cases in which interpretation of the collective bargaining agreement is called for is deciding a factual question: What the parties intended. *The division effected by the common law between ambiguous writings (interpreted by the jury) and unambiguous writings (interpreted by the court as a "question of law") is logically inapplicable to interpretation questions which arise in arbitration.* The policy considerations which compelled the common law to make the division (jury illiteracy, lack of respect for writings, etc.) are absent in the arbitration forum. A fortiori is this true under a statute such as PERA, which mandates arbitration as the exclusive means of interpreting collective bargaining agreements in the first instance. See 43 P.S. § 1101.903.

To state the matter more precisely, where a task of an arbitrator, PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if "the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention ..."
... It was this approach which was meant to be suggested by the brief statement in International Brotherhood of Firemen and Oilers, quoted supra, that "the arbitrator's interpretation of the contract must be upheld if it is a reasonable one."

*Id.* at 592–594, 375 A.2d at 1274–1275 (emphasis added) (citations omitted).

■ We glean from this extensive passage that the question of whether a contract is ambiguous or unambiguous is not a question for the Court in these cases, but one to be decided by the arbitrator. The arbitrator recognized this when he discussed why "the language is not as unambiguous as the District claims." (Arbitrator's decision, May 13, 1992, p. 6). He then analyzed the contract and its surrounding circumstances and concluded that they supported the union's position.

■ Actually, the 1991 cba agreement is silent on the issue involved. However, that silence, or absence of language dealing specifically with the issue, does not prevent the arbitrator's award from drawing its essence from the agreement. In *Midland Borough School District v. Midland Education Association (PSEA)*, 532 Pa. 530, 616 A.2d 633 (1992), our Supreme Court had before it an arbitrator's decision interpreting an agreement which was silent on the subcontracting out of bargaining unit work. The Court recognized the absence of any provision concerning subcontracting and, despite the silence of the agreement in that regard, relied on the following language from the *Community College* case:

the intention of the contracting parties as evidenced by their collective bargaining agreement *and the circumstances surrounding its execution* ... is to be respected by the judiciary if "the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention...."

*Midland Borough,* 532 Pa. at 536, 616 A.2d at 636 (emphasis added). The Court then stated "[w]e hold, therefore, that the authority of the arbitrator to decide the subcontracting issue properly and reasonably originated from the 'essence' of the collective bargaining agreement." *Id.*

■ We have carefully considered the contentions of the parties as presented to the arbitrator and cannot conclude that the arbitrator's decision was an unreasonable one under the circumstances. The arbitrator noted that the absence of any yearly salary provision in the cba for the various types of helpers did not convince him of the school district's contention that the union bargained away the admitted right the helpers had under the 1988 cba. In the words of *Midland Borough,* the arbitrator thus examined the cba and the "circumstances surrounding its execution" in order to ascertain intention, and his conclusion must be "respected by the judiciary."

■ Indeed, once the arbitrator, as was his function, resolved the issue of fact regarding whether there was any negotiation on the provision in question, his conclusion was evident. Any contrary conclusion that the 1991 cba agreement itself—without any negotiation—had settled the issue would be inconsistent and unwarranted. Nonetheless, it is not a function of the common pleas court or this Court to answer that question independently. We are only to decide whether the arbitrator's decision was reasonable because, as the Supreme Court has held, if both sides took reasonable positions, it is error for this Court to disturb the award by "substituting its view of the proper construction of the agreement for the view of the arbitrator ..." *Community College,* 473 Pa. at 598, 375 A.2d at 1277.

■ One further argument the school district makes must be addressed. That argument proceeds as follows. In *Austin Area Education Association,* this Court concluded it was error for an arbitrator to interpret a "spreadsheet" prepared by a union. Based on that holding, the school district argues that it was equally improper for the arbitrator to refer to the 1988 collective bargaining agreement and use it to arrive at his conclusion. We disagree. The issue presented to the arbitrator was essentially meaningless without a reference to the 1988 agreement. Indeed, the contention of the school district concerning the bargaining that occurred before the execution of the 1991 cba was based on specific discussion of the 1988 agreement terms regarding helpers' yearly salaries and on the additional, related contention that the union specifically bargained those rights away.

Admittedly, the arbitrator restored the same situation that existed under the 1988 agreement, though not because he interpreted *that* agreement, but because he concluded that the 1991 cba did not, by its silence, give away the right embodied in the parties' past practices. Under these circumstances, we affirm.

### ORDER

AND NOW, this 6th day of January, 1995, the order of the Court of Common Pleas of Lehigh County, No. 92–C–1498, dated March 18, 1994, is hereby affirmed.